[No. A011520. First Dist., Div. Four. June 11, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM JOSEPH AHERN et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

---

[1]Parts II, III and IV are not certified for publication, as they do not meet the standards for publication contained in California Rules of Court, rule 976(b)(1). The concurrence is certified for publication.

**COUNSEL**

Ronald W. Rose, Mark A. Arnold, Carleen R. Arlidge, Rommel Bondoc, Dennis B. Natali and Mark Webb for Defendants and Appellants.

John K. Van de Kamp, Attorney General, John A. Gordnier, Senior Assistant Attorney General, and Michael D. Whelan, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**CALDECOTT, J.**\*—Appellant Suellyn Jayne Rumachik pleaded guilty to conspiracy to manufacture and sell methaqualone and to manufacture of

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

methaqualone. Appellant Royce Bell pleaded guilty to conspiracy to manufacture and sell methaqualone. Appellant William Joseph Ahern pleaded guilty to manufacture of methaqualone.

Prior to entry of the guilty pleas appellant Rumachik moved to suppress evidence pursuant to Penal Code section 1538.5; appellant Ahern moved to suppress the officers' testimony and quash the warrant because of the destruction of the original surveillance notes and appellant Bell moved to set aside the information pursuant to Penal Code section 995 on the ground of insufficient evidence to connect him to the charged offenses. The record does not show that either Ahern or Bell filed a section 1538.5 motion. However, the minutes show that a hearing was held on the section 1538.5 motion and the section 995 motion. At the hearing two defendants, not parties to this appeal, asked to join in the motions. The minutes state, "Court rules that the cause is joined in by all defendants, except for the 995 P.C." It is not clear whether this included Ahern and Bell but at the time of plea Ahern, Bell and Rumachik moved to withdraw their 1538.5 motions and this was granted by the court.

The appeals are from the judgments and each notice of appeal mentions section 1538.5.

In May of 1980 agents for the State of California Bureau of Narcotics Enforcement (hereafter BNE) undertook an extensive investigation of illicit methaqualone manufacturing in San Francisco. Surveillance was conducted on suspects in the following locations: a warehouse at 237 Clara Street, and at houses at 612 La Grande Avenue and 2336 Lake Street, San Francisco.

Over 50 law enforcement agents participated in the investigation of this methaqualone (aka Quaalude) manufacturing case. From July 25, 1980, to August 5, 1980, an intensive surveillance was conducted of various persons and locations, and the results of that surveillance were incorporated into a 55-page master surveillance log. The master surveillance log was designed to fairly, accurately, and in chronological sequence depict what had been seen by surveillance personnel at different times and places. The master surveillance log was, in fact, a compilation in final form of the surveillance agents' raw notes. Many of the events depicted in the log were also memorialized in photographs that were retained; and a number of the photographs were received in evidence.

The master surveillance log was compiled as follows: Agents on surveillance took notes of their personal observations, what they heard over the law enforcement radio, and what other agents said they had observed. A

bin was kept in the office for the agents' handwritten notes to be deposited at the end of the different shifts.

An agent was assigned to compile all of the notes of the other agents, collate the data, and put the data in usable form. The assigned agent started his task by making sure that he had all of the notes. Typically, he started on a day's notes the day after they were written; on occasion, however, he fell behind. Sometimes he had to go out into the field and get an agent's notes. He Xeroxed the handwritten notes that had been turned in to him. If a note was sufficiently spelled out, as opposed to abbreviated, he taped the Xerox copy of that note into his rough master surveillance log. If a note was written in abbreviations, he entered it into his rough master surveillance log by writing it out in full.

As the notes were compiled in an ongoing, rough master surveillance log, the assigned agent stated that he checked with each surveillance agent to make sure his log was correct. It was his task to check with the agents and differentiate what they had personally observed from what they had heard over the law enforcement radio or what another agent had told them. When the agents approved how an event was depicted, a day's events were turned in to be typed for the master surveillance log.

An entry in the master surveillance log was written in chronological order under a particular date, had a time listed for it, and had the names of agents who saw all or part of the event in question. If an agent's name was recorded next to an event observed during the surveillance, that meant that the agent had seen all or part of the event.

Normal BNE procedure called for rough notes, including surveillance notes, to be discarded or destroyed after they had been embodied in an official report. Pursuant to this procedure, the agents' handwritten surveillance notes were disposed of since that information was embodied in the master surveillance log.

State law enforcement personnel originally became suspicious of the illicit drug manufacturing when Mr. David Newsom, President of Center Hardware in San Francisco, reported to the State Department of Justice that a Mr. Robert Wilhite had ordered forty 3-kg bottles of O-toluidine from Center Hardware in early May 1980. O-toluidine is one of the primary chemicals used for the manufacture of Quaalude.

State law requires that every chemical supply or distribution house which sells or supplies N-acetylanthranilic acid report the transfer to the California Department of Justice. In an interview with Mr. Newsom by an agent from

the Department of Justice, the agent learned Mr. Wilhite had bought 1,500 pounds of anthranilic acid from Newsom in the past, and had it delivered to a house on the 2300 block of Lake Street. Forty more gallons of O-toluidine were in the store on order for Mr. Wilhite on May 9, 1980, and Mr. Newsom informed the agent that Mr. Wilhite had expressed interest in purchasing 1,000 pounds of N-acetylanthranilic acid (which the agent estimated would produce at least 1,000 pounds of Quaalude). The agent traced Wilhite's telephone number which he had left with Mr. Newsom to a house located at 2336 Lake Street, San Francisco.

A warrant for the authorization of an electronic tracking device in the bottom of an "Explotab" drum which Wilhite had ordered was issued on July 24, 1980. Following the placement of the electronic tracking device in the drum, surveillance was started in what was observed as the procurement of chemicals, the use of chemicals in the manufacture of methaqualone (Quaalude), and the ultimate distribution of methaqualone. Each agent was responsible for maintaining a log on what occurred at each location under surveillance.

Appellants Ahern, Bell and Rumachik were among the principal perpetrators of, and showed continuous involvement in, the illegal activities conducted on the premises located at 237 Clara Street, 612 La Grande Avenue and 2336 Lake Street, San Francisco.

The 50 agents involved in the surveillance observed heavy packages leaving certain locations and going to other locations, and detected chemical smells at various times throughout the surveillance at 237 Clara Street.

Robert Wilhite's cover story to Mr. Newsom that he needed the chemicals for the manufacture of light bulbs (Wilhite worked for Westinghouse in the Lamp Division and a sign bearing "Central Lighting" was in front of the building at 237 Clara Street) was determined to be untrue when a General Electric expert advised the Department of Justice that none of the chemicals were used in the manufacture of light bulbs.

Based on the continuous surveillance by the California Department of Justice agents, search warrants were issued for the premises located at 2336 Lake Street, 237 Clara Street, and at 612 La Grande Avenue, all in San Francisco. The warrants were executed on the morning of August 5, 1980, and appellants were arrested. Chemicals, equipment, packaging supplies, property tending to establish and document sales of methaqualone (Quaalude), buyer lists, seller lists, recordation of sales, and paraphernalia used

in the preparation, manufacture, use, distribution and packaging of methaqualone were found at the premises upon execution of the search warrant.

I

*Appellants' Hitch motion was properly denied.*

 Appellants challenge judgments of conviction following pleas of guilty without having obtained certificates of probable cause as required by Penal Code section 1237. They allege that compliance with section 1237 is not required inasmuch as the appeal involves a search and seizure issue, the validity of which was contested pursuant to Penal Code section 1538.5. A question exists as to whether appellants' guilty pleas have foreclosed appellate review of the alleged *Hitch* error. We believe they do.

At the hearing on Penal Code 1538.5 motion, appellants' attempt to quash the search warrant was not based on any alleged lack of probable cause. Rather, the challenge to the warrant was based on the "failure" to preserve rough surveillance notes made by individual agents even though those notes were translated into a master surveillance log, which was incorporated by reference into the challenged search warrant affidavit. Appellants contended below, and contend here, that the destruction of the rough surveillance notes compelled the trial court to quash the warrant and to suppress the evidence which was discovered upon service of the warrant. In short, appellants made a *Hitch* motion (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]) at the 1538.5 hearing.

Appellants contend that the destruction of the original surveillance notes hampered them in their cross-examination of the agents, so that they were unable to effectively determine whether the individual agents actually made the observations attributed to them in the affidavit.

However, *Hitch* is a due process case. The rights addressed by *Hitch* and which *Hitch* seeks to protect are *Fifth* Amendment rights. A motion pursuant to section 1538.5 is addressed to rights protected by the Fourth Amendment and seeks to protect an individual against unreasonable searches and seizures. As pointed out in *People* v. *Brown* (1981) 119 Cal.App.3d 116, 124 [173 Cal.Rptr. 877], "Section 1538.5 'can be properly employed only to shield a defendant from Fourth Amendment violations; it has no part in protecting against Fifth Amendment infringements . . . .' " Also as stated by our high court in *People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 733 [125 Cal.Rptr. 798, 542 P.2d 1390], "More recently in *People* v. *Gale* (1973) 9 Cal.3d 788 [108 Cal.Rptr. 852, 511 P.2d 1204], we described a motion under section 1538.5 as one 'in the nature of a

proceeding in rem against the evidence itself' which is directed 'to the legality of specific items of evidence obtained by a search and seizure. [Citation.]' "[2] At a section 1538.5 motion the court is not concerned with the issue of a defendant's guilt or innocence but rather whether the search comports with Fourth Amendment protections. *Hitch,* however, is concerned with the issue of guilt or innocence only. *Hitch* seeks to protect from destruction *evidence* which is material on the issue of guilt or innocence. (*People* v. *Nation* (1980) 26 Cal.3d 169, 176 [161 Cal.Rptr. 299, 604 P.2d 1051]; *People* v. *Hitch, supra,* 12 Cal.3d at p. 649.)

■ The situation presented here is not unlike the situation where an unnamed informant provides the basis for probable cause. Without question a defendant would want to examine the informant to determine the accuracy of the information which is contained in the search warrant affidavit. However, the law is clear that when a search is made pursuant to a warrant valid on its face, disclosure of the identity of an unnamed informant solely to aid in an attack on probable cause is not required. (Evid. Code, § 1042, subd. (b); *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 88 [104 Cal.Rptr. 226, 501 P.2d 234]; *People* v. *Keener* (1961) 55 Cal.2d 714, 723 [12 Cal.Rptr. 859, 361 P.2d 587], disapproved on other grounds in *People* v. *Butler* (1966) 64 Cal.2d 842, 845 [52 Cal.Rptr. 4, 415 P.2d 819].)

It is equally clear that upon an adequate showing that the informer may be a material witness on the issue of guilt or innocence, disclosure may be compelled. (*Theodor* v. *Superior Court, supra,* at p. 88; *People* v. *Garcia* (1967) 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366].) But this rule is a recognition of the rights involved in a *trial* of a criminal charge and is irrelevant to a hearing under Penal Code section 1538.5. Similarly, only when the lost or destroyed evidence is material on the issue of guilt or innocence will a court afford sanctions under *Hitch.*

Appellants contend that the rough surveillance notes are material to their defense in that there might be areas of "mistaken identity, errors in transcribing or other areas of prejudice." These attacks plainly relate to the issue of guilt or innocence and not to the question of the warrant's validity. Therefore, by virtue of their pleas of guilty appellants are foreclosed from raising an issue material only to the question of guilt or innocence. Appel-

---

[2]Where *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) are "inextricably bound up in a search and seizure" determination, they are reviewable in a 1538.5 motion. (*People* v. *Superior Court (Zolnay), supra,* 15 Cal.3d 729; *People* v. *Carter* (1980) 108 Cal.App.3d 127, 130 [166 Cal.Rptr. 304].) While Miranda is a Fifth Amendment right, the review of *Miranda* under 1538.5 has always dealt with violation of this right which resulted from an unlawful search or a violation which resulted in a subsequent seizure.

lants not having obtained a certificate of probable cause, the instant appeal for an alleged *Hitch* error will not lie.

II*

*The presence of newspersonnel did not affect
the validity of search.*

. . . . . . . . . . . . . . . . . . . .

The judgments are affirmed.

Panelli, J., concurred.

**POCHÉ, Acting P. J.**—I concur in the judgment of affirmance only.

The majority concludes that the *Hitch*[1] issue is not reviewable on these appeals from judgments of conviction entered on guilty pleas because a certificate of probable cause was not obtained. In my view Penal Code section 1538.5, subdivision (m)[2] preserves the issue for appellate review.

As a general rule, section 1538.5 "can be properly employed only to shield a defendant from Fourth Amendment violations; it has no part in protecting against Fifth Amendment infringements . . . ." (*People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 734 [125 Cal.Rptr. 798, 542 P.2d 1390]; see also *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 6 [135 Cal.Rptr. 786, 558 P.2d 872].) But that rule does not apply where the defendant seeks to suppress tangible evidence obtained as a result of an unlawfully obtained admission or confession. (*People* v. *Carter* (1980) 108 Cal.App.3d 127, 130 [166 Cal.Rptr. 304]; *People* v. *Superior Court (Mahle)* (1970) 3 Cal.App.3d 476, 484 [83 Cal.Rptr. 771], cited with approval in *People* v. *Superior Court (Zolnay), supra,* 15 Cal.3d at pp. 733-734.) In other words, although section 1538.5 cannot be employed to challenge an admission or confession alleged to be the product of a Fifth Amendment violation (*People* v. *Brown* (1981) 119 Cal.App.3d 116, 124-125 [173 Cal.Rptr. 877]; *People* v. *Cartwright* (1979) 98 Cal.App.3d 369, 382-383), where the party challenges the tangible fruits of such a Fifth Amendment violation, section 1538.5 is the appropriate procedural vehicle. (*People* v. *Pettingill* (1978) 21 Cal.3d 231, 234-235 [145 Cal.Rptr. 861, 578 P.2d 108]; *People* v. *Superior Court (Zolnay), supra,* 15 Cal.3d at p. 735.)

---

*See footnote 1, *ante,* page 27.

[1]*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361].

[2]All statutory references are to the Penal Code.

Similarly where a defendant seeks to suppress the tangible fruits of a *Hitch* violation his motion should survive a guilty plea as it would if he had sought to suppress the tangible evidence of a *Miranda*[3] violation.

It is true, of course, that *Miranda* involves a different clause of the Fifth Amendment (the privilege against self-incrimination) than *Hitch* (due process) but that does not explain the lead opinion's holding that the former withstands a guilty plea and the latter does not. Such a result not only imposes novel consequences upon the law of criminal procedure but involves and is based upon distinctions which—if they exist at all—have not been apparent to any judicial eye before. The additional procedural complexity which this holding imposes upon the everyday practice of criminal law is in my view unwise, unnecessary, unexplained and unfair. Accordingly, I would proceed to reach the merits of defendants' *Hitch* argument.

Assuming for purposes of argument only that *Hitch* error was established, the trial court was not compelled to impose the remedy of suppression of the evidence seized pursuant to the search warrant. This is so because the trial court is vested with "a large measure of discretion in determining the appropriate sanction" to be imposed for destruction of evidence in violation of the *Hitch* principles. (See, e.g., *People* v. *Zamora* (1980) 28 Cal.3d 88, 99 [167 Cal.Rptr. 573, 615 P.2d 1361].) Its job is to "tailor the sanction to compensate for the exact wrong done; . . ." (*Id.,* at p. 103.)

Here there is no demonstrated need to impose the sanction of suppression of conclusive evidence. (See *People* v. *Hitch, supra,* 12 Cal.3d at p. 653, fn. 7.) Instead, an appropriate sanction would have been in the range of either suppression of the officer's testimony at trial (see *People* v. *Mejia* (1976) 57 Cal.App.3d 574 [129 Cal.Rptr. 192]) or an instruction to the jury relating the destruction of the surveillance notes to the officer's testimony (see *People* v. *Zamora, supra,* 28 Cal.3d at pp. 99-103).

I concur in the judgment affirming the convictions because even if defendants had been successful in demonstrating *Hitch* error, they have not demonstrated that they would have been entitled to an order suppressing the evidence. That is the only issue which survives the guilty pleas.

A petition for a rehearing was denied June 28, 1984, and on July 11, 1984, the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied September 19, 1984.

---

[3]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].