[No. A021008. First Dist., Div. Three. Jan. 17, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY GABRIEL GALAN et al., Defendants and Appellants.

788

### COUNSEL

Philip H. Pennypacker, Leland Nerio, Deborah Tuttelman and E. John Compatore, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Cynthia Choy Ong, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**ANDERSON, J.**\*—Defendants Henry G. Galan (Henry), Manuel G. Galan (Manuel) and Robin G. Fox (hereafter appellants) appeal from their respective judgments of conviction entered on guilty pleas.

---

\*Assigned by the Chairperson of the Judicial Council.

On the evening of October 27, 1981, an anonymous call was made to the San Jose Police Department reporting a shooting incident at 1221 Ribisi Circle. Responding to a radio dispatch from the department, Officers Gonzales and Rives each proceeded to that address to investigate. Arriving at the condominium complex simultaneously, they parked their cars in the alleyway where each condominium garage fronts and where the address of each unit is posted. The front doors of the complex face a large grassy area and other condominium units. There is no street that goes by the front doors of the complex and there are no walkways between the individual units. While there is access to the back of each unit through the garage, in order to get to the front of the units one must walk around the entire building.

When the officers arrived the garage door was wide open. Through an open door at the rear of the garage, officers could look into a small patio area and also into the residence through a sliding glass door. Approaching this open back door in the garage the officers, by the aid of a flashlight, saw a bullet hole and found a slug in the door jamb.

Officers Gonzales and Rives were joined by recently arrived Officer Torres (all of whom were in uniform) and the three entered the patio through this open door. Once in the patio they saw people inside the house running around. Noticing the police officers, Manuel came to the door. Officer Torres, who knew the Galan brothers due to a previous shooting incident, announced that they were investigating a reported shooting and requested entry into the residence. Manuel refused and demanded that the officers leave. As Manuel was attempting to lock the doors and draw the drapes, the officers saw a handgun on the kitchen counter. Thereupon, the officers forced the door open and entered.

Officer Torres entered the residence first and observed heading upstairs an unidentified male whom he attempted to pursue, but Manuel and Fox intervened and prevented him from doing so. Fox and Manuel verbally and physically attacked Officer Torres; Fox delayed Manuel's arrest but was ultimately removed by Officer Rives and then Officer Torres was able to subdue, handcuff and arrest Manuel. Henry, who was also downstairs, was arrested without resistance by Officer Gonzales. Officer Torres then proceeded to the kitchen and took possession of the gun.

After the downstairs area was secured, Officer Rives, using Manuel as a shield, went upstairs to get hold of the fourth person. Rives could not locate anyone upstairs, but noticed that the window was left open. While upstairs, the officer saw drugs and drug paraphernalia (i.e., multicolored rolled up balloons, some with straws, a scale, a food grinder and a white powdery substance) in plain view.

Officer Hafley of the Narcotics Unit of the San Jose Police Department confirmed that the balloons seized in appellant's apartment contained heroin. It was his opinion that the numerous balloons of heroin and the drug paraphernalia indicated that the narcotics found in the apartment was possessed for the purpose of sale. His examination of Henry and Manuel revealed that they were under the influence of heroin at the time of their arrest.

Based upon this evidence, five criminal offenses were charged against the appellants as follows: Count I charged all three appellants with possession of heroin for sale (Health & Saf. Code, § 11351) and alleged that they were armed with a firearm (a pistol) (Pen. Code,[1] § 12022, subd. (a)). Count II charged that Henry and Manuel were under the influence of heroin at the time in dispute (Health & Saf. Code, § 11550). Count III accused all three appellants of obstruction of a public officer in the performance of his duty (§ 148). Count IV charged Manuel with assault on a peace officer (§§ 240-241). Lastly, count V charged Henry with possession of a concealable firearm (§ 12021, subd. (a)).

On June 15, 1982, appellants filed a motion to dismiss the information per section 995 and to suppress evidence pursuant to section 1538.5, both of which were denied. Thereupon, appellants Henry and Fox pled guilty to simple possession of heroin (Health & Saf. Code, § 11350), a lesser included offense of count I, and other charges were dismissed; Manuel pled guilty to possession of heroin for sale (count I) and the other charges were dismissed. Thereafter, Fox and Henry were placed on probation for three years, and Manuel was sentenced to state prison for the midterm of three years, but execution of sentence was suspended pursuant to Welfare and Institutions Code section 3051 and he was committed to the civil rehabilitation program as a narcotic addict.

Appellants' principal contention on appeal is that their judgment of conviction should be reversed because (1) the warrantless entry and search of both the garage and the apartment was unlawful, and (2) the erasure of the police tapes on which the call of the anonymous informer was recorded destroyed material evidence and thereby deprived appellants of due process of law. (*People v. Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361].) Appellant Fox additionally claims that her conviction should be reversed for the further reasons that an unreasonable delay occurred between the filing of the complaint and the arrest and that the evidence was insufficient to support the possession of heroin charge against her. We reject appellants' contentions and affirm the judgments.

---

[1]Unless otherwise indicated, all further references are to the Penal Code.

*Entry of Garage*

Appellants first argue that the entry of the garage without a search warrant was unlawful because it rested on the uncorroborated tip of an anonymous informer which failed to constitute sufficient probable cause for the intrusion of the premises. (*Aguilar* v. *Texas* (1964) 378 U.S. 108, 114-115 [12 L.Ed.2d 723, 729, 84 S.Ct. 1509]; *People* v. *Hill* (1974) 12 Cal.3d 731, 760-761 [117 Cal.Rptr. 393, 528 P.2d 1]; *People* v. *Abbott* (1970) 3 Cal.App.3d 966, 971 [84 Cal.Rptr. 40].) In the alternative, appellants allege that even if probable cause existed, the prosecution's failure to comply with the knock and notice requirement of the statute rendered the garage search unlawful. (§ 844;[2] *People* v. *Bradley* (1969) 1 Cal.3d 80 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Bruce* (1975) 49 Cal.App.3d 580 [122 Cal.Rptr. 648]; see also *People* v. *Kanos* (1969) 70 Cal.2d 381 [74 Cal.Rptr. 902, 450 P.2d 278].)

▇▇ Appellants' first contention fails since the garage was not protected by the constitutional safeguards proscribing unreasonable searches and seizures. ▇▇ It is well settled that in determining what is a constitutionally protected area the test is whether the person has exhibited a subjective expectation of privacy which is objectively reasonable and, if so, whether that expectation has been violated by unreasonable government intrusion. (*People* v. *Edwards* (1969) 71 Cal.2d 1096, 1100 [80 Cal.Rptr. 633, 458 P.2d 713]; *Burkholder* v. *Superior Court* (1979) 96 Cal.App.3d 421, 427 [158 Cal.Rptr. 86]; see also *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 636-638 [108 Cal.Rptr. 585, 511 P.2d 33]; *People* v. *Bradley, supra,* 1 Cal.3d at pp. 84-85.) Although a detached garage on occupied residential property may be entitled to constitutional protection against unreasonable police searches (*People* v. *Medina* (1972) 7 Cal.3d 30, 40 [101 Cal.Rptr. 521, 496 P.2d 433]; *People* v. *Bruce, supra,* 49 Cal.App.3d 580, 587-588), it is well established that the determination of whether a person may harbor a reasonable expectation of privacy with respect to a specific place depends on the totality of the facts and circumstances (*North* v. *Superior Court* (1972) 8 Cal.3d 301, 308-312 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; *Phelan* v. *Superior Court* (1979) 90 Cal.App.3d 1005, 1011 [153 Cal.Rptr. 738]); the doctrine of "constitutionally protected area" cannot "serve as a talismanic solution to every Fourth Amendment problem" (*Katz* v. *United States* (1967) 389 U.S. 347, 350-352, fn. 9 [19 L.Ed.2d 576, 581-582, 88 S.Ct. 507]; *People* v. *Medina, supra,* 7 Cal.3d at p. 41).

---

[2]Section 844 provides that "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

Consistent therewith, it has been held that the garage of a condominium apartment which is available to all tenants and readily accessible by the members of the general public, does not fall within the protective umbrella of the Fourth Amendment and the warrantless search of such premises cannot be invalidated on either constitutional or statutory grounds.

The cases saliently on point are *People* v. *Terry* (1969) 70 Cal.2d 410 [77 Cal.Rptr. 460, 454 P.2d 36] and *People* v. *Szabo* (1980) 107 Cal.App.3d 419 [165 Cal.Rptr. 719]. In *Terry,* similar to the case at bench, the police officers made a warrantless entry into the garage of an apartment complex and discovered marijuana in plain view in defendant's car. Contending that the warrantless entry of the garage violated his constitutional rights, defendant (a tenant of the apartment) sought to suppress the contraband seized in his car. In rejecting defendant's contention, our Supreme Court pointed out that police officers in the performance of their duty may, without violating the Constitution, peaceably enter the common hallway of an apartment building without a warrant or express permission to do so, and even if such entry constitutes trespass it does not invalidate the subsequent search and seizure. The garage used in common by the tenants of the apartment building, continued the court, is similar in nature to a common hallway of an apartment building and the entry and search of such garage do not violate the constitutionally protected right of privacy. (*People* v. *Terry, supra,* 70 Cal.2d at pp. 427-428.) *Szabo* also involved a warrantless entry and search of an apartment building garage. In upholding the legality of both initial entry and ensuing search the court emphasized that since the garage was accessible to anyone who wished to enter, there was (and could be) no reasonable expectation of privacy: ". . . the instant case, the garage in which the orange van was parked was for a 30-unit apartment house. There was no gate or sign denying access to the garage to anyone who might enter it, whether tenant, visitor or delivery man, or anyone who might mistakenly walk or drive into it. . . . [T]he appellant could not have reasonably expected privacy in such a garage." (*People* v. *Szabo, supra,* 107 Cal.App.3d at p. 429.)

The case at bench falls squarely within the aforecited authorities. For, the location of the condominium complex was such that entry into the individual apartment was commonly made through the garage. The garage door, facing the alley accessible to the public, was open. The addresses of the tenants occupying the units were posted on the garage door. There was no sign or other warning prohibiting the entry or denying access to anyone who wanted to visit the tenants or intended to enter the premises for business purposes. Under these circumstances appellants could not have any reasonable expectation of privacy in the garage and the police officers were free to enter it to investigate the reported shooting incident without the constitutionally re-

quired probable cause and/or warrant and without complying with the statutory knock and notice requirement.

### Entry of Residence

Appellants next argue that even if the investigation of the garage was proper, the warrantless entry into their apartment along with the ensuing arrest and search were unlawful because (a) the officers had no probable cause for appellants' arrest; (b) there were no exigent circumstances excusing the warrantless intrusion into the residence; and (c) the police failed to comply with section 844 prior to the forcible entry. There is no substance to any of these arguments.

The record fairly demonstrates that the officers had reasonable grounds to believe that (1) a shooting had recently occurred in that very place, and (2) the occupants of the residence were involved in the incident. The tip of an anonymous informer (who, it was later determined, was one of appellants' neighbors) called the attention of the police to the shooting by reporting that there had been gunshots at or around the residence located at 1221 Ribisi Circle. This information was corroborated by requisite independent evidence (*People* v. *Reeves* (1964) 61 Cal.2d 268, 274 [38 Cal.Rptr. 1, 391 P.2d 393]) when the police found the bullet hole and the slug in the rear garage door leading into the patio. The suspicion of the police deepened when through a sliding glass door they observed the troubled behavior of the occupants scurrying around in the apartment, attempting to draw the drapes and lock the door, refusing to talk to the police, etc. But most important of all, the police officers' suspicion ripened into probable cause when they actually observed a handgun on top of the kitchen counter—an observation the inhabitants tried to preclude by closing the curtain.

Appellants' contention that the police should have obtained a warrant prior to conducting a search in the apartment and to making the arrests, likewise misses the point. While a warrantless arrest or search within a residence or home has been held unreasonable per se (*People* v. *Ramey* (1976) 16 Cal.3d 263, 276 [127 Cal.Rptr. 629, 545 P.2d 1333]; *People* v. *Dickson* (1983) 144 Cal.App.3d 1046, 1052-1053 [192 Cal.Rptr. 897]) it is well established that such arrest or search is justified and permissible in case of exigent circumstances. (*People* v. *Roberts* (1956) 47 Cal.2d 374 [303 P.2d 721]; *People* v. *Bradley* (1982) 132 Cal.App.3d 737 [183 Cal.Rptr. 434].) Exigent circumstances have been defined as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction

of evidence." (*People* v. *Ramey, supra,* 16 Cal.3d at p. 276; see also *People* v. *Soldoff* (1980) 112 Cal.App.3d 1, 6-8 [169 Cal.Rptr. 57].)

█ In the case at bench the facts appearing in the record underscore the existence of exigent circumstances justifying the warrantless entry and search of the apartment. It bears repeating that the police were investigating a shooting incident which allegedly took place on the premises and which was substantiated by the finding of the bullet hole and the slug in the garage door and by the observation of the handgun within the apartment. When appellants refused to cooperate with the police and attempted to hide from them by locking the door and drawing the drapes, the officers could reasonably conclude that the destruction of evidence (particularly the handgun) was imminent. For this reason alone the entry of the apartment was justified without any further delay.

Appellants' third argument that the police should have complied with the knock and notice requirement before entering the residence, is palpably meritless and must be rejected for three fundamental reasons. █ One, the law is well settled that exigent circumstances which justify the entry of the premises without a warrant also justify noncompliance with section 844. (*People* v. *Keogh* (1975) 46 Cal.App.3d 919, 927 [120 Cal.Rptr. 817]; *People* v. *Dickson, supra,* 144 Cal.App.3d at p. 1053, fn. 3.) █ Two, the police officer is excused from compliance with the knock-and-notice requirement if the facts known to the officer before his entry are sufficient to support his good faith belief that the compliance with the statute would increase his peril or frustrate the arrest. (*People* v. *Di Santiago* (1969) 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Gastelo* (1967) 67 Cal.2d 586, 589 [63 Cal.Rptr. 10, 432 P.2d 706].) This is especially true where, as here, the defendant is armed with, or possesses a gun. (*People* v. *Maddox* (1956) 46 Cal.2d 301, 305 [294 P.2d 6].) █ Three, it is recognized that section 844 may be satisfied with substantial compliance. (*People* v. *Keogh, supra,* 46 Cal.App.3d 919, 927.) In the case at bench the record demonstrates at least substantial compliance with the statute. Officer Torres wore a uniform with a badge on it, which made it obvious to Manuel that he was dealing with a police officer. He also advised Manuel that he was investigating a shooting incident and requested entry. The forcible entry by the police officers took place only after Manuel refused to let them in. In brief, these facts satisfy substantially (if not fully) the legal requirements which must be complied with by the police before making a forcible entry under section 844. (*Ibid.*)

*Hitch Motion*

Henry and Manuel joined by Fox moved to dismiss the information on the basis that the police tapes recording the call of the anonymous informer

contained material evidence, the destruction of which deprived appellants of due process of law. (*People* v. *Hitch, supra,* 12 Cal.3d 641.) The motions were denied by the trial court, and appellants complain that this denial was reversible error; appellants' argument is without any merit.

 It is widely recognized that the so-called *Hitch* issue cannot be raised on appeal pursuant to section 1538.5, after the defendant pled guilty to the charge or charges contained in the information. This is so because *Hitch* is a due process case and protects Fifth Amendment rights while the rights addressed by section 1538.5 are Fourth Amendment rights seeking to safeguard individuals against unreasonable searches and seizures. (*People* v. *Ahern* (1984) 157 Cal.App.3d 27, 32 [204 Cal.Rptr. 11]; *People* v. *Brown* (1981) 119 Cal.App.3d 116, 124 [173 Cal.Rptr. 877].) Furthermore, the motion under section 1538.5 is one "in the nature of a proceeding in rem against the evidence itself" which is directed "to the legality of specific items of evidence obtained by a search and seizure." (*People* v. *Gale* (1973) 9 Cal.3d 788, 793 [108 Cal.Rptr. 852, 511 P.2d 1204]; see also *People* v. *Superior Court* (*Zolnay*) (1975) 15 Cal.3d 729, 733 [125 Cal.Rptr. 798, 542 P.2d 1390].)[3] As a consequence "[t]he special statutory procedure of section 1538.5, including the provisions of subdivision (m) allowing an appeal after a guilty plea, is not applicable to other kinds of pretrial rulings" (*People* v. *Stearns* (1973) 35 Cal.App.3d 304, 306 [110 Cal.Rptr. 711]), such as a pretrial ruling on a *Hitch* motion (*People* v. *Ahern, supra,* 157 Cal.App.3d at pp. 32-33).

### Miscellaneous Contentions

 The remaining issues raised by appellant Fox (i.e., that there was an unreasonable delay between the time of arrest and the filing of the complaint and there was not sufficient evidence supporting the charge of possession of heroin) may be summarily disposed of. It is established beyond any dispute that "Other than search and seizure issues which are specifically made reviewable by section 1538.5, subdivision (m), all errors arising prior to entry of a guilty plea are waived, except those which question the juris-

---

[3]Section 1538.5 provided in part: "(a) A defendant may move for the return of property or to suppress as evidence any *tangible or intangible thing* obtained as a result of a search or seizure . . . . [¶] (m) The proceedings provided for in this section, Section 995, Section 1238, and Section 1466 shall constitute the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure where the person making the motion for the return of property or the suppression of evidence is a defendant in a criminal case and *the property or thing* has been offered or will be offered as evidence against him. A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. Such review on appeal may be obtained by the defendant providing that at some stage of the proceedings prior to conviction he has moved for the return of property or the suppression of the evidence." (Italics added.)

diction or legality of the proceedings resulting in the plea." (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 9 [136 Cal.Rptr. 409, 559 P.2d 1028]; see also *People* v. *Hayton* (1979) 95 Cal.App.3d 413, 416 [156 Cal.Rptr. 426].) The issues asserted by appellant Fox fall within neither of these categories and therefore are not cognizable on appeal.

The judgment is affirmed as to each appellant.

Scott, Acting P. J., concurred.

**BARRY-DEAL, J.**—I concur in the judgment of affirmance, but I have serious reservations about the majority's holding that the *Hitch* issue (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]) could not properly be raised on appeal pursuant to Penal Code section 1538.5. While it is true that the decision in *People* v. *Ahern* (1984) 157 Cal.App.3d 27 [204 Cal.Rptr. 11] supports this view, *Ahern* did not settle the question, but merely created a clear conflict within the Courts of Appeal. Six years earlier, the majority in *People* v. *Swearingen* (1978) 84 Cal.App.3d 570 [148 Cal.Rptr. 755] reached the opposite conclusion. I tend to agree with the *Swearingen* opinion and with Justice Poché's view expressed in his concurring opinion in *Ahern*: ". . . where a defendant seeks to suppress the tangible fruits of a *Hitch* violation his motion should survive a guilty plea . . .," and this court should reach the merits of his *Hitch* argument. (*People* v. *Ahern, supra*, 157 Cal.App.3d at pp. 34-35 (conc. opn. of Poché, Acting P. J.).)

Nevertheless, I concur with the result reached by the majority in the case at bench, because even if appellant had been successful in demonstrating *Hitch* error, the suppression motion would properly have been denied. On April 19, 1982, at the preliminary hearing, Joyce Gentry, a dispatcher for the County of Santa Clara, testified to the content of the call which was the subject of the recording in question, and she stated that the caller identified himself or herself as a "direct neighbor," giving the address of the house from which the caller heard shots as " 'The house next-door to me.' " Thus, even though the tape was destroyed, the evidence was not "lost" to appellant. As stated in *California* v. *Trombetta* (1984) 467 U.S. 479, — [81 L.Ed.2d 413, 422, 104 S.Ct. 2528, 2534], the evidence must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. . . ." in order for a duty to preserve evidence to arise. Since it was made clear that the caller lived next door to appellant, the simplest investigation apparently would have brought him to the source of the evidence in question. Furthermore, Ms. Gentry testified that she preserved the content of the call accurately by means of computer terminal and printout. Under these circumstances appellant has not demonstrated that the

sanction of suppression of evidence would have been appropriate, assuming *Hitch* error occurred. (*People* v. *Ahern, supra,* 157 Cal.App.3d at p. 35 (conc. opn. of Poché, Acting P. J.).)

Petitions for a rehearing were denied February 6, 1985, and the petition of appellant Henry Galan for a hearing by the Supreme Court was denied March 14, 1985.