[No. 13381. Third Dist. Dec. 16, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JESS CALHOUN HALSTEAD, Defendant and Appellant.

774

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Roy Dahlberg, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Thomas Y. Shigemoto, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

GILBERT, J.*—   This case poses the question whether a claim of error under *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527

*Assigned by the Chairperson of the Judicial Council.

P.2d 361], can be raised by appeal following a guilty plea. We hold that any such error is waived by a guilty plea and is not, thereafter, cognizable on appeal. Defendant was charged with forcible rape (Pen. Code, § 261, subd. (2)),[1] oral copulation (§ 288a), and kidnapping. (§ 207.) In the trial court he moved for dismissal of the charges or other sanctions due to the failure of the sheriff's department to preserve relevant physical evidence. (*People* v. *Hitch, supra,* 12 Cal.3d 641.) The trial court denied the motion to dismiss but ruled the test results related to the lost evidence would not be admissible at trial. Thereafter, defendant plead guilty to the offenses. He applied for and was granted a certificate of probable cause. On appeal he challenges the trial court's ruling on his *Hitch* motion, contending the sanction imposed was inadequate. He argues his guilty plea does not preclude appellate review of the alleged *Hitch* error or, alternatively, that the failure to preserve this issue constitutes ineffective assistance of counsel. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of April 30, 1977, defendant and a friend stopped their car and gave a ride to a woman who was hitchhiking to work. After driving a few minutes, defendant drove off the main road and stopped his car. His companion left the site, saying he "[didn't] want any part of this." Defendant then struck the victim, raped her, and forced her to engage in an act of oral copulation. Before abandoning the victim, defendant bent his license plate in an attempt to prevent the victim from identifying the car.

Defendant subsequently left California and was gone from the state until mid-1983. On his return, he was apprehended and charged with forcible rape, oral copulation and kidnapping stemming from the 1977 assault. The victim testified at the preliminary hearing and identified defendant as the assailant. Defendant's friend also testified regarding the events he had witnessed before leaving the scene.

Defendant initially entered pleas of not guilty to the information. Shortly afterward, he moved to dismiss the information due to the failure of the sheriff's department to preserve evidence.[2]

Evidence at the hearing on the *Hitch* motion established that the victim's underpants, jacket and specimens taken during a physical examination of

---

[1]All further statutory references are to the Penal Code.

[2]As an alternative sanction, defendant proposed a jury instruction similar to that approved in *People* v. *Zamora* (1980) 28 Cal.3d 88, 102-103 [167 Cal.Rptr. 573, 615 P.2d 1361]: "[I]f the lost evidence were available, scientific analysis would rule Defendant out as the donor of the seminal fluid and saliva."

the victim were collected after the rape.[3] Subsequent laboratory tests indicated the presence of semen on the underwear and saliva on the jacket. The collected evidence was stored at the Amador County Sheriff's office. A search for the items prior to trial revealed that they had been lost, possibly during a routine, periodic cleanout of the evidence locker.

Expert testimony was presented to show that, if the evidence were available, testing might be done which could conclusively eliminate defendant as the perpetrator of the charged offenses.

The trial court found that "[t]he evidence before the court shows the inadvertent loss of certain material evidence from the Amador County Sheriff's evidence locker, which evidence could be subject to tests, which in spite of the passage of time could result in the production of evidentiary material favorable to the defendant." As a sanction, the court ruled the prosecution would be barred from introducing the results of the laboratory tests at trial.

Defendant subsequently withdrew his not guilty pleas and pleaded guilty to the charged offenses. At the time of the plea, counsel for defendant indicated her intention to seek a certificate of probable cause in order to appeal from the ruling on the *Hitch* motion. The plea, however, was not conditioned on the issuance of the certificate.[4]

---

[3]The department obtained two glass slides, one labeled "vaginal" and the other "cervical," and a glass vial labeled "wash solution." No seminal fluid was found in the wash solution, nor were intact sperm cells found on the slides.

[4]The following colloquy took place at the change of plea proceedings:
"THE COURT: All right. Now, has there been any promise of reward or immunity or leniency in order to get you to enter into this arrangement?
"THE DEFENDANT: No.
"THE COURT: Has there been any threat made against you of any kind or has any force been used upon you, in order to get you to enter into this plea arrangement?
"THE DEFENDANT: No.
"THE COURT: This is what—a tactical decision; is it, Counsel?
"[DEFENSE COUNSEL]: That's correct.
"THE COURT: Based upon the going over the evidence with Mr. Halstead and, I take it, that the two of you have concluded that he is likely to be found guilty is rather substantial; is that correct?
"[DEFENSE COUNSEL]: That's correct.
"THE COURT: Is that your understanding also?
"THE DEFENDANT: Yes, sir."
It was at this hearing that defendant's attorney informed the court she would be presenting an application for a certificate for probable cause. In later summarizing this discussion for the record, the court stated: "And then we have also discussed the idea that you felt that you could reserve and want to go on the record as reserving, for appeals purposes, the prior motion that you made, the hitch [*sic*] motion. . . . [¶] You can take it up, you see, but—so you feel that you have the right to reserve those, and you're asking the Court for a certificate of probable cause. I haven't made any commitment to you that I would grant that certificate, but you believe that I must, under your understanding of the law; is that correct?" Counsel agreed with this characterization.

Defendant applied to the trial court for a certificate of probable cause on the ground "that the trial court erroneously denied defendant's motion for dismissal or other sanctions under *People* v. *Hitch* . . . ." The certificate issued and this appeal followed.

## DISCUSSION

## I

The threshold question presented by this appeal is whether a trial court ruling on a *Hitch* motion may be appealed following a plea of guilty. We conclude that it may not.

We begin by reviewing the principles which govern the impact of a plea of guilty on appealability and by noting the role of a certificate of probable cause. We next assess the nature of a *Hitch* motion in light of these principles.

Our discussion begins with section 1237.5 which governs appeals following guilty pleas.[5] The statute tells us both how appeals may be *taken* and upon what they may be *based*. The statute first says that an appeal following a guilty plea may not be *taken* without a certificate of probable cause.[6] To procure a certificate, a written application must be made to the trial court asserting the basis for appeal. Presented with the required written showing, the trial court must "certify any arguably meritorious appeal" and issue the certificate of probable cause. (*People* v. *Holland* (1978) 23 Cal.3d 77, 84 [151 Cal.Rptr. 625, 588 P.2d 765].) The section also tells us that appeals after pleas of guilty may only be *based* on "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings" resulting in the plea. (*People* v. *De Vaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].)    Significantly, "The issuance of a certificate of probable cause pursuant to section 1237.5 does not operate to expand the grounds upon which an appeal may be taken . . . ." (*Id.*, at p. 896; and see *People* v. *Ribero* (1971) 4 Cal.3d 55, 63-64 [92 Cal.Rptr.

---

[5]Section 1237.5 provides that: "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

[6]Rule 31(d), California Rules of Court, implements section 1237.5 and interprets it not to require a certificate where the grounds for appeal are those "occurring after entry of such [guilty or no contest] plea which do not challenge the validity of the plea . . . ." (See *People* v. *Arwood* (1985) 165 Cal.App.3d 167, 172 [211 Cal.Rptr. 307].)

692, 480 P.2d 308].) We turn then to the question, what issues survive a guilty plea for purposes of appeal.

We recently assessed the nature of a guilty plea in *People* v. *Turner* (1985) 171 Cal.App.3d 116 [214 Cal.Rptr. 572]. We noted there that it constitutes an admission of each essential element of the charged offenses and recognized that "[a] guilty plea thus concedes that the prosecution possesses legally admissible evidence sufficient to prove defendant's guilt beyond a reasonable doubt. ▆ Accordingly, a plea of guilty waives any right to raise questions regarding the evidence, including its sufficiency or admissibility, and this is true whether or not the subsequent claim of evidentiary error is founded on constitutional violations." (*Id.*, at p. 125; and see *In re Hawley* (1967) 67 Cal.2d 824, 828 [63 Cal.Rptr. 831, 433 P.2d 919].) Because of these implications, on an appeal following a guilty plea, "A defendant . . . can raise only those questions which go to the power of the state to try him despite his guilt. In other words, in the language of the statute, defendant can only raise 'grounds going to the legality of the proceedings.' (§ 1237.5)" (*Id.*, at p. 126.) What may not be appealed are "issues relating to [a defendant's] guilt or to the procedure which would otherwise be required to establish his guilt." (*Ibid.*)[7] What may be appealed are claims, "which, if true, would preclude the state from prosecuting [a defendant] despite his guilt." (*Id.*, at p. 127.)

Of particular interest here is the illustration of this distinction afforded by cases involving alleged "speedy trial" violations.[8] "The essence of a defendant's speedy trial or due process claim in the usual case is that the passage of time has frustrated his ability to establish his innocence. The resolution of a speedy trial or due process issue necessitates a careful assessment of the particular facts of a case in order that the question of prejudice may be determined. [¶] Where the defendant pleads guilty, there are no facts to be assessed. And since a plea of guilty admits every element of the offense charged, there is no innocence to be established. Therefore, the issues raised by appellant are not cognizable on an appeal from a judgment entered upon a guilty plea." (*People* v. *Hayton* (1979) 95 Cal.App.3d 413, 419 [156 Cal.Rptr. 426], fn. omitted.) *Hayton* involved a felony prosecution. In contrast, the speedy trial issue in *Avila* v. *Municipal Court* (1983) 148 Cal.App.3d 807 [196 Cal.Rptr. 286], involved a speedy trial claim in a misdemeanor context. There, the court reasoned, "[r]eversal of a felony conviction on appeal because of a speedy trial error requires a showing of prejudice. [Citations omitted.] . . . [¶] The impact of a Penal Code section

[7]This is not true, of course, where the right to appeal an issue relating to admissibility of evidence following a guilty plea is preserved by statute. (See, e.g., subd. (m) of § 1538.5.)

[8]These cases are discussed at length in *Turner, supra,* 171 Cal.App.3d at page 128.

1382[9] violation on the prosecution of a misdemeanor is, however, quite different. When a felony is dismissed pursuant to section 1382, the prosecution may refile the same charge. Once a misdemeanor has been dismissed pursuant to section 1382, it cannot be filed again. This distinction leads to a different standard of appellate review of speedy trial issues for misdemeanors; a section 1382 error requires reversal and dismissal of a misdemeanor conviction without any showing of prejudice [citations] and has nothing to do with guilt or innocence. Thus, the rationale for the holding that a speedy trial issue is not cognizable following a guilty plea simply does not apply to a misdemeanor conviction." (148 Cal.App.3d at p. 812.)

Applying these rules, we found in *Turner* that a plea of guilty did not preclude appeal from error asserted under section 654 as interpreted by *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], because the error was one which went to the prosecution's ability to prosecute the defendant despite his guilt because of a failure to properly join charges for prosecution.[10]

Focusing this light from *Turner,* we look to see whether claimed *Hitch* error deals with guilt or innocence and its provability or whether it has to do with the viability of the criminal proceedings regardless of guilt or innocence.

In *People* v. *Hitch, supra,* 12 Cal.3d 641, the Supreme Court applied general principles of due process and held that the government was obligated to preserve a breath sample taken from a person charged with driving under the influence of alcohol and that the intentional but nonmalicious destruction of such evidence would result in sanctions in the absence of compliance with appropriate procedures for collection and preservation. The principles of *Hitch* have been applied to other types of evidence, including evidence of the kind at issue here. (*People* v. *Nation* (1980) 26 Cal.3d 169 [161 Cal.Rptr. 299, 604 P.2d 1051].) What is of consequence to the issue of appealability, of course, is not what objects are subject to the rules concerning preservation, but what interests the rules promote. We deduce these interests from the underpinnings of *Hitch.*

*Hitch* applied due process principles articulated in a number of earlier federal and California cases. Foremost among these is *Brady* v. *Maryland*

---

[9]Section 1382 requires that actions be dismissed if a misdemeanor defendant is not tried within 30 or 45 days, depending on custody status, or if a felony is not tried within 60 days of the filing of the information, except in specified circumstances.

[10]"By moving to dismiss under *Kellett,* defendant has in no way protested his innocence of the charges; he merely objects to the right of the state to try him for those offenses, a matter going to the legality of the proceedings. It is 'the right not to be haled into court at all' that defendant asserts, not his innocence." (*Turner, supra,* 171 Cal.App.3d at p. 128.)

(1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]. *Brady* involved the government's intentional withholding of a codefendant's statement admitting that he, and not defendant Brady, had actually committed a murder with which Brady was charged. This admission was contrary to the prosecution's trial evidence. Holding this suppression violative of due process, the court characterized the application of the rule it announced as not being "punishment of society for misdeeds of a prosecutor but avoidance of an *unfair trial* to the accused." (373 U.S. at p. 87 [10 L.Ed.2d at p. 218], italics added.) The court then noted that "a prosecution that withholds evidence on demand of an accused which, if made available, *would tend to exculpate him* . . . helps shape a trial that bears heavily on the defendant." (*Ibid.*, 373 U.S. at pp. 87-88 [10 L.Ed.2d at p. 219], italics added.) *Brady* thus held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Ibid.*, 373 U.S. at p. 87 [10 L.Ed.2d at p. 218].) Later, in *Giglio* v. *United States* (1972) 405 U.S. 150 [31 L.Ed.2d 104, 92 S.Ct. 763], a bargain with a key prosecution witness was not disclosed by the government. The court found the evidence significant to the credibility of the witness and found the due process rule of *Brady* should be applied. "When the 'reliability of a given witness may well be determinative of *guilt or innocence*' nondisclosure of evidence affecting credibility falls within [the] rule." (405 U.S. at p. 154 [31 L.Ed.2d at p. 108], citation omitted, italics added.) The California Supreme Court faced similar issues in *People* v. *Kiihoa* (1960) 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673]. In *Kiihoa*, a prosecution was dismissed to avoid disclosure of an informant. After the informant had left the state and was unavailable as a witness for defendant, the charges were refiled. Our Supreme Court held that "[t]he denial by the prosecution of an opportunity for the defendant to seek out the informer and to defend by those means, where the testimony of the informer would be material to the issues, is unfair and oppressive to the defendant, and deprives him of due process of law." (*Kiihoa, supra,* 53 Cal.2d at p. 752.) Explicating the holding in *Kiihoa* in *Bellizzi* v. *Superior Court* (1974) 12 Cal.3d 33 [115 Cal.Rptr. 52, 524 P.2d 148], the court noted that, "[t]he fundamental due process principle underlying *Kiihoa* is that the prosecution may not deprive an accused of the *opportunity* to present material evidence which might prove his innocence." (*Id.,* at p. 36, italics in original; and see *People* v. *Mejia* (1976) 57 Cal.App.3d 574, 579-580 [129 Cal.Rptr. 192].)

These are but a few of the cases that preceded *Hitch.* They express, however, the fundamental underpinnings of the *Hitch* rule—the unfair impact of suppressed or lost evidence on a defendant's opportunity to establish his innocence. The particulars vary with the kind of evidence and on the

cause of its unavailability, but the central concern—the availability of evidence material to innocence or guilt—is always the same. (See *People* v. *Hitch, supra,* 12 Cal.3d at pp. 647-649.)

We indulge this brief iteration to demonstrate that the question raised in a *Hitch* motion is a question relating to evidence of guilt or innocence and its provability and not a question relating to the power to prosecute despite guilt. This conclusion is reinforced by looking to the concepts which guide the fashioning of remedies for *Hitch* violations.

The question of appropriate remedial measures to be taken by the trial court was largely left open in *Hitch*. Guidelines were more recently articulated in *People* v. *Zamora* (1980) 28 Cal.3d 88 [167 Cal.Rptr. 573, 615 P.2d 1361]. We discuss the factors identified by *Zamora* to be used in the fashioning the sanction later in this opinion in connection with defendant's claim of ineffective assistance of counsel. ▆▆ We note here, however, the general rule of *Zamora* that, "the courts enjoy a large measure of discretion in determining the appropriate sanction that should be imposed because of the destruction of discoverable records and evidence. '[N]ot every suppression of evidence requires the dismissal of charges. . . . *The remedies to be applied need be only those required to assure the defendant a fair trial.*' (*Brown* v. *Municipal Court* (1978) 86 Cal.App.3d 357, 363 [150 Cal.Rptr. 216] [citation].)" (*People* v. *Zamora, supra,* 28 Cal.3d at p. 99, fn. omitted, italics supplied.) ▆▆ Questions which go to the ability of a defendant to have a fair trial are questions which relate to the proof of guilt or innocence and not to the ultimate legality of the proceedings.[11]

As the Attorney General correctly asserts, similar considerations have led to the conclusion that appellate review of the denial of a motion for disclosure of the identity of an informant is precluded by a plea of guilty. (*People* v. *Barkins* (1978) 81 Cal.App.3d 30, 33 [145 Cal.Rptr. 926]; *People* v. *Castro* (1974) 42 Cal.App.3d 960, 963-965 [117 Cal.Rptr. 295].) In each instance, the issue is the availability of material evidence on the issue of guilt or innocence. Indeed, the analogue to informant identity as a question of availability of evidence material to guilt or innocence is one the Supreme

---

[11]This conclusion follows even in cases where dismissal is sought or granted as a remedy. Cases of the intentional, bad faith of destruction of physical evidence are not particularly common. On the other hand, a number of cases have involved intentional acts resulting in the unavailability of material witnesses. (See, e.g., *People* v. *Mejia, supra,* 57 Cal.App.3d 574; *United States* v. *Tsutagawa* (9th Cir. 1974) 500 F.2d 420; *United States* v. *Mendez-Rodriguez* (9th Cir. 1971) 450 F.2d 1; and see *People* v. *Kiihoa, supra,* 53 Cal.2d 648.) Even in cases where dismissal is warranted, the basis is always the cognizable deprivation of the opportunity for a fair trial resulting from deprivation of the opportunity to submit evidence. (*People* v. *Mejia, supra,* 57 Cal.App.3d 574, 579-580.)

Court relied on in formulating the *Hitch* rule. (*People* v. *Hitch, supra,* 12 Cal.3d at p. 648.)[12]

Accordingly, we hold that a guilty plea precludes an appeal based on error predicated on the rules expressed in *People* v. *Hitch* and related cases.[13]

## II

Recognizing the problems of appealability defendant contends that if he cannot appeal, his attorney's failure to recognize that his guilty plea precluded the possibility of review of asserted *Hitch* error constitutes ineffective assistance of counsel.

■ In order to demonstrate ineffective assistance of counsel a defendant must show trial counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate and that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense, or, if a defense is not involved, it is reasonably probable a determination more favorable to defendant would have resulted in the absence of counsel's failings. (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1154]; *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

However, "[r]eviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that

---

[12]The United States Supreme Court recognizes this relationship as, "what might loosely be called the area of constitutionally guaranteed access to evidence." (*United States* v. *Valenzuela-Bernal* (1982) 458 U.S. 858, 867 [73 L.Ed.2d 1193, 1203, 102 S.Ct. 3440]; and see the cases discussed in *California* v. *Trombetta* (1984) 467 U.S. 479, 485 [81 L.Ed.2d 413, 419-420, 104 S.Ct. 2528].)

[13]Defendant relies on *People* v. *Ahern* (1984) 157 Cal.App.3d 27 [204 Cal.Rptr. 11], to support his contention that review of *Hitch* sanctions is possible despite a guilty plea. *Ahern* considered whether review of *Hitch* error was possible without a certificate of probable cause under the statutory exception established for illegal search and seizure issues (§ 1538.5, subd. (m)). The court distinguished the Fifth Amendment concerns of *Hitch* from the Fourth Amendment protections of section 1538.5, and held the defendant was precluded from asserting *Hitch* error under section 1538.5, subdivision (m). The court concluded, "Therefore, by virtue of their pleas of guilty appellants are foreclosed from raising an issue material only to the question of guilt or innocence. Appellants not having obtained a certificate of probable cause, the instant appeal for an alleged *Hitch* error will not lie." (*Id.,* at pp. 33-34; accord *People* v. *Galan* (1985) 163 Cal.App.3d 786, 795-796 [209 Cal.Rptr. 837]; cf. *People* v. *Aguilar* (1985) 165 Cal.App.3d 221 [211 Cal.Rptr. 333].)

The court's mention of a certificate of probable cause in its concluding comment is dicta. The issue in *Ahern* was the relationship between *Hitch* motions and suppression motions under the statutory authority of section 1538.5, not whether an appeal centered on *Hitch* error is proper if a certificate of probable cause is issued. To the extent *Ahern* implies an appeal would have been possible had defendant obtained a certificate of probable cause, we disagree.

counsel had no rational tactical purpose for his act or omission. In all other cases the conviction will be affirmed and defendant relegated to habeas corpus proceedings at which evidence dehors the record may be taken to determine the basis, if any, for counsel's conduct or omission." (*People* v. *Fosselman, supra,* 33 Cal.3d at pp. 581-582.) Where the record sheds no light on the reasons for counsel's actions, the case must be affirmed, "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, . . ." (*People* v. *Pope, supra,* 23 Cal.3d at p. 426.)

■ As we have explained above, in *Hitch* the Supreme Court held federal due process considerations require that evidence be preserved and disclosed to the defendant if there is a reasonable possibility the evidence would be favorable on the issue of guilt or innocence. (12 Cal.3d at p. 649.) The court ruled the failure to preserve this evidence may result in sanctions. (*Id.,* at pp. 650-653.) Later in *People* v. *Zamora, supra,* 28 Cal.3d 88, 100, the Supreme Court established three factors for the court to consider in crafting remedial sanctions. First, the circumstances surrounding the loss must be examined. If the destruction of evidence was legal, no sanctions are necessary. On the other hand, if the evidence was destroyed in bad faith, dismissal of charges may be appropriate. Second, the severity of the sanction depends on the materiality of the evidence. Third, the court must consider the impact of sanction on future police conduct and future cases. In all cases, the goal is to insure a fair trial. (*Id.,* at p. 99.)

Turning to the instant case, we find no abuse of discretion in the trial court's selection of a remedy for the determined *Hitch* error. Although the evidence was material to guilt or innocence, the record demonstrates the loss of evidence was inadvertent. The court's chosen sanction, suppression of the test results, was appropriate.[14] ■ Consequently, even had defendant's attorney preserved this issue for review, either by going to trial or seeking a pretrial writ, we cannot conclude a result more favorable to defendant is reasonably probable.

---

[14]We recognize the question whether the rule expressed in *Hitch* has survived, in its entirety, after the United States Supreme Court's decision in *California* v. *Trombetta, supra,* 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528]. *Trombetta* restates the existence of a due process obligation to preserve evidence, but emphasizes that "that duty must be limited to evidence that might be expected to play a significant role in the suspects defense. To meet this standard of constitutional materiality [citation], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*Id.,* at pp. 488-489 [81 L.Ed.2d at p. 422].) Our Supreme Court also recognizes the substantial difference in the *Trombetta* formulation of the test of materiality versus its own, but has not yet considered the continual viability of its *Hitch* rule. (*In re Michael L.* (1985) 39 Cal.3d 81, 86 [216 Cal.Rptr. 140, 702 P.2d 222].) We need not reach the issue here, as the record amply supports the trial court's finding of materiality under either test. (See *People* v. *Nation* (1980) 26 Cal.3d 169 [161 Cal.Rptr. 299, 604 P.2d 1051].)

Furthermore, for all the record shows, defendant's plea of guilty was a rational "tactical decision." No other reason for that decision is apparent from the record except defendant's and counsel's belief that the evidence was sufficient to convict defendant on all three counts. The claim of ineffective assistance of counsel is therefore unavailing on this appeal.

The judgment is affirmed.

Regan, Acting P. J., and Sparks, J., concurred.