[No. F023220. Fifth Dist. June 20, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
CORA LEE WHITFIELD, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IIB.

**COUNSEL**

William J. Arzbaecher III, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Joel E. Carey, Susan J. Orton and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MARTIN, Acting P. J.**—Following the denial of her motion to suppress evidence (Pen. Code, § 1538.5)[1] appellant Cora Whitfield, pursuant to a plea agreement, pleaded nolo contendere to one count of possession of a controlled substance for purposes of sale (Health & Saf. Code, § 11351). The court sentenced appellant to the lower term of two years.

On appeal, appellant contends the court, for two reasons, erred in denying her suppression motion. First, she argues evidence was seized as a result of her arrest for which there was no probable cause, and therefore the seizure violated her Fourth Amendment rights under the United States Constitution. Second, she argues evidence was seized in violation of her rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] (*Miranda*) and therefore should have been suppressed.

In the published portion of this opinion, we will conclude that although evidence was seized as a result of a custodial interrogation violative of *Miranda* principles, exclusion of such evidence is not required by federal law and therefore such evidence may not be excluded under California law. In the unpublished portion, we will hold that appellant's Fourth Amendment rights were not violated. Accordingly, we will affirm.

### I.

### FACTS

On September 30, 1994, Bakersfield Police Officer Greg Williamson conducted a surveillance of apartments B and D in the apartment complex located at 1109 Monterey Street in Bakersfield. Officer Williamson had previously obtained a search warrant to search those apartments, based on information he had obtained that "narcotics activity" involving cocaine base was occurring in those apartments. While engaged in this surveillance, over the course of 45 minutes Officer Williamson observed, on 3 separate occasions, persons arrive at the apartment complex, make contact with appellant and, on each occasion, make an "exchange" with appellant. The officer could not see what was being exchanged.[2] Officer Williamson had extensive training and experience in detecting the sale of narcotics, particularly cocaine base, and based thereon, he formed the belief that the exchanges he had seen were narcotics transactions involving cocaine base.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] It is not entirely clear from the record where in relation to apartments B and D these exchanges took place. Officer Williamson testified, "She would—they [i.e., presumably appellant and the three persons involved in the exchanges] were standing in front of the apartment building, but they would kind of go back by apartment A, which is the first apartment, and there is a breezeway there and conduct their transactions."

After observing this activity, Officer Williamson left the area and returned with other police officers[3] to execute the search warrant. All the officers were dressed in "raid gear" and were clearly identifiable as police officers. Appellant and two other female subjects "were sitting in the breezeway as [the officers] were attempting to [enter]" apartments B and D.[4] Immediately upon the officers making contact with the appellant and the other two subjects, the police handcuffed all three. The officers, including Officer Williamson, then entered apartment B. Officer Williamson came back out of the apartment approximately 20 to 30 seconds later, at which time he asked appellant if she had any narcotics on her person. Appellant "said yes." When asked if that response to his question was "accompanied by some movement[,]" Officer Williamson testified, "Yes. Her handcuffs were behind her back and she reached down between her skin and her pants[,] . . . pulled out a napkin" and "Handed it to [Officer Williamson]." The officer examined the napkin and found that it contained 18 pieces of what he believed to be cocaine base.

Appellant was placed under arrest for possession of cocaine base. Shortly thereafter, incident to that arrest, she was searched by another officer, who found a quantity of marijuana on appellant's person. Officer Williamson advised appellant of her *Miranda* rights approximately one hour later.

One of the subjects detained was appellant's sister; she was an occupant of one of the apartments named in the search warrant. Appellant was not an occupant of either apartment.

Appellant moved to suppress, inter alia, the cocaine base and marijuana seized by the police.

## II.

### DISCUSSION

A. *Miranda*

■ Appellant contends the seizure of the cocaine base and marijuana occurred as a result of a "custodial interrogation" that was not preceded by *Miranda* warnings, and therefore the court erred in denying her suppression motion.

---

[3]The record does not reveal the number of other officers who accompanied Officer Williamson.

[4]See footnote 2, *ante.* The record provides no further clarification as to where the breezeway was located in relation to apartments B and D.

█ "*Miranda* requires that a criminal suspect be admonished of specified Fifth Amendment rights. But in order to invoke its protections, a suspect must be subjected to *custodial interrogation . . . .*" (*People* v. *Morris* (1991) 53 Cal.3d 152, 197 [279 Cal.Rptr. 720, 807 P.2d 949], original italics.) "Thus two requirements must be met before *Miranda* is applicable; the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.' " (*U. S.* v. *Perdue* (10th Cir. 1993) 8 F.3d 1455, 1463.) The prosecution has the burden of proving that a custodial interrogation did not take place. (*People* v. *Rucker* (1980) 26 Cal.3d 368, 386 [162 Cal.Rptr. 13, 605 P.2d 843].)

A person is in custody for purposes of *Miranda* if he is "deprived of his freedom in any significant way or is led to believe, as a reasonable person, that he is so deprived." (*People* v. *Taylor* (1986) 178 Cal.App.3d 217, 225 [223 Cal.Rptr. 638].) "Interrogation consists of express questioning or of words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." (*People* v. *Johnson* (1992) 3 Cal.4th 1183, 1224 [14 Cal.Rptr.2d 702, 842 P.2d 1], citing *Rhode Island* v. *Innis* (1980) 446 U.S. 291, 300-301 [64 L.Ed.2d 297, 307-308, 100 S.Ct. 1682].) █ In the instant case, we conclude, and the People do not dispute, that appellant was subject to custodial interrogation at the time Officer Williamson asked her if she had any narcotics in her possession.

We now turn to the People's contention that under United States Supreme Court precedents, the failure to administer *Miranda* warnings to a suspect subject to custodial interrogation does not violate a suspect's constitutional rights, and therefore evidence seized as a result of such failure is not the "fruit" of a constitutional violation and should not be suppressed.

In *Michigan* v. *Tucker* (1974) 417 U.S. 433 [41 L.Ed.2d 182, 94 S.Ct. 2357], the court was asked to extend the doctrine announced in *Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407], applying the exclusionary rule to evidence seized in violation of the Fourth Amendment, to suppress the testimony of a prosecution witness whose identity was discovered as a result of information elicited from the defendant without the benefit of *Miranda* warnings. (*Oregon* v. *Elstad* (1985) 470 U.S. 298, 308 [84 L.Ed.2d 222, 231-232, 105 S.Ct. 1285].) The court concluded that the police failure to give the *Miranda* admonitions did not violate the defendant's constitutional rights; rather it " 'departed only from the prophylactic standards later laid down by this Court in *Miranda* to safeguard that privilege.' [Citation.] Since there was no actual infringement of the suspect's constitutional rights, the case was not controlled by the doctrine expressed in

*Wong Sun* that fruits of a constitutional violation must be suppressed. . . . The unwarned confession must, of course, be suppressed, but the Court ruled that introduction of the third-party witness' testimony did not violate Tucker's Fifth Amendment rights." *(Ibid.,* quoting *Michigan* v. *Tucker, supra,* 417 U.S. at p. 446 [41 L.Ed.2d at p. 194].)

In *Elstad,* the defendant, a burglary suspect, made incriminating statements while subject to custodial interrogation, without having been given *Miranda* warnings. A short time later at the police station, after police gave defendant his *Miranda* warnings, which he indicated he understood, defendant gave a written statement describing his involvement in the burglary. Relying in large part on *Tucker,* the court held that the failure to administer *Miranda* warnings during a custodial interrogation, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise free will, does not violate a suspect's constitutional rights and does not mandate the exclusion of a subsequent statement voluntarily made by the defendant after he was given *Miranda* warnings and agreed to speak to police; therefore, the second statement was not excludable. In reaching this conclusion, "[T]he Supreme Court differentiated between a *Miranda* violation of nonconstitutional dimension and a more serious infringement of a suspect's constitutional rights. What the Court called 'procedural' or 'technical' violations of *Miranda* [citation]—which is apparently how it viewed the failure to give the requisite admonishments to Elstad— were equated with 'noncoercive' *Miranda* violations [citation]. Improprieties of this nature call into operation familiar principles. 'Failure to administer *Miranda* warnings creates a presumption of compulsion . . . requiring suppression of all unwarned statements.' [Citation.] With this said, qualifications were then noted. 'The failure of police to administer *Miranda* warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege against compulsory self-incrimination has not been intelligently exercised.' [Citation.] The presumption also 'does not require that the statements and their fruits be discarded as inherently tainted.' " *(People* v. *Montano* (1991) 226 Cal.App.3d 914, 932-933 [277 Cal.Rptr. 327], quoting *Elstad.)*

The court, however, despite the fairly sweeping statement quoted immediately above, expressly left open the question of whether physical evidence seized as a result of an unwarned but noncoercive statement by a suspect during custodial interrogation must be excluded; the court stated that the "reasoning [of *Tucker*] applies with equal force when the alleged 'fruit' of a noncoercive *Miranda* violation is *neither a witness nor an article of evidence* but the accused's own voluntary testimony." *(Oregon* v. *Elstad, supra,* 470 U.S. at p. 308 [84 L.Ed.2d at p. 232], italics added.)

Following *Elstad*, federal courts of appeals have uniformly held that "[T]he reasoning of *Elstad* and *Tucker* applies as well to non-testimonial physical evidence obtained as a result of a *Miranda* violation." (*U.S.* v. *Gonzalez-Sandoval* (9th Cir. 1990) 894 F.2d 1043, 1048; accord, *U.S.* v. *Sangineto-Miranda* (6th Cir. 1988) 859 F.2d 1501, 1518 .) We agree. "The critical inquiry is whether the unwarned statements preceding a subsequent, warned confession or discovery of derivative evidence are made voluntarily. Where there is no evidence of coercion or a denial of due process in elicitation of the statements, the object of the fifth amendment exclusionary rule—assuring trustworthiness of evidence introduced at trial—is not served by barring admission of the derivatively obtained evidence or statements." (*U.S.* v. *Gonzalez-Sandoval*, *supra*, 894 F.2d at p. 1048.)

We can discern no basis for distinguishing physical evidence seized as a result of a noncoercieve *Miranda* violation from such "derivatively obtained evidence or statements." (*U.S.* v. *Gonzalez-Sandoval*, *supra*, 894 F.2d at p. 1048.) "Stated another way, a 'fruit of the poisonous tree' analysis does not apply to the 'fruit' of a noncoercive *Miranda* violation." (*People* v. *Torres* (1989) 213 Cal.App.3d 1248, 1255 [262 Cal.Rptr. 323].)

Appellant contends the California Supreme Court has held to the contrary. We agree. In *People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729 [125 Cal.Rptr. 798, 542 P.2d 1390], two defendants moved to suppress confessions obtained in violation of *Miranda*. The trial court, apparently on its own motion, "amended the motion to include suppression, as well, of the physical evidence seized following the confessions and granted the motion in its entirety." (*Id.* at p. 733.) The People petitioned for a writ of mandate, arguing that (1) the court did not have power to suppress the confessions under section 1538.5; (2) the court exceeded its jurisdiction in amending the motion to include suppression of the physical evidence; and (3) "the physical evidence and the confessions were properly obtained." (15 Cal.3d at p. 733.)

On the procedural issue, our Supreme Court held that under "the particular circumstances presented by the matter at bench," the confessions were the proper subject of a section 1538.5 motion, and that the physical evidence seized as a result of those confessions was "undeniably within the proper scope of section 1538.5." (*People* v. *Superior Court (Zolnay)*, *supra*, 15 Cal.3d at p. 735.) In this connection the court stated, "Since admissibility of the [physical] evidence depended upon whether or not a *Miranda* violation had occurred, a ruling on the *Miranda* issue necessarily became part of the section 1538.5 hearing." (*Ibid.*) On the merits, the court held the confessions and the physical evidence obtained as a result of those confessions were properly suppressed.

In *People* v. *Mattson* (1990) 50 Cal.3d 826 [268 Cal.Rptr. 802, 789 P.2d 983] the court clarified its holding in *Zolnay*, indicating that the confessions were the proper subject of the section 1538.5 motion only because the issue of their admissibility was intertwined with the issue of the admissibility of the physical evidence: "Section 1538.5 is properly used only to exclude evidence obtained in violation of a defendant's state and/or federal (Fourth Amendment) right to be free of unreasonable search and seizure. Although the procedure may be used to exclude confessions that are the product of an unlawful search and seizure, and *the question of whether a confession was unlawfully obtained may be decided by the court in order to rule on the admissibility of physical evidence that is discovered as a result of the confession*, section 1538.5 may not be used to suppress admissions and confessions on grounds that they are the product of Fifth Amendment and/or Sixth Amendment violations. (*People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 733-734 . . . .) *Zolnay* does not hold that when a *Miranda* violation [citation] is found in a hearing on a section 1538.5 motion the confession may be suppressed as part of that motion. The statutory language would not support that rule since the evidence to be suppressed must have been 'obtained as a result of a search and seizure.' " (15 Cal.3d at pp. 850-851, italics added, fn. omitted.) The court stated that Mattson's motion to exclude physical evidence obtained in the search of his car, the consent for which was obtained in violation of *Miranda*, "was properly brought pursuant to section 1538.5." (*Id.* at p. 851.)

Thus, our Supreme Court held in *Zolnay* that section 1538.5 may be used to exclude physical evidence that is discovered as a result of statements obtained in violation of *Miranda*.[5] The question before us, then, is how are we to resolve the apparent conflict with current federal law on this point.

We begin our analysis of this point with the principle that "In the wake of Proposition 8, . . . California courts apply federal standards to *Miranda*-related issues of both substance [citation] and procedure [citation]." (*People* v. *Montano*, *supra*, 226 Cal.App.3d at p. 930.) Appellant argues that because

---

[5]At oral argument, the People argued that *Zolnay* can be understood as holding that a section 1538.5 motion may be used to exclude statements obtained in violation of *Miranda* only where the *Miranda* violation was preceded by a Fourth Amendment violation. We disagree. In *Zolnay*, there was no Fourth Amendment violation preceding the noncoercive *Miranda* violation. The People also contend *Zolnay* should not be read for the holding we ascribe to it because it is based on dictum in *People* v. *Superior Court (Mahle)* (1970) 3 Cal.App.3d 476 [83 Cal.Rptr. 771] (hereinafter *Mahle*). Again, we disagree. The *Zolnay* court did refer to *Mahle* with what the Attorney General calls a "see" cite, and *Mahle* does hold, contrary to federal law today, that physical evidence seized as a result of a *Miranda* violation is excludable as the "fruit" of that violation, but this does not change the holding of *Zolnay*. Respondent's actual argument on this point appears to be that *Zolnay* was incorrectly decided in light of current federal law.

*Elstad* left open the issue of whether nontestimonial evidence seized as a result of a noncoercive *Miranda* violation is excludable, we are bound by the California Supreme Court's last word on the issue. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *People* v. *Rooney* (1985) 175 Cal.App.3d 634, 644 [221 Cal.Rptr. 49] [Court of Appeal bound by California Supreme Court holdings on Fourth Amendment issue although lower federal courts hold to the contrary; "[T]hose decisions are not binding on this court since the United States Supreme Court has never squarely ruled on the issue."].) We disagree.

We recognize that *Elstad* and *Tucker* did not deal with physical evidence seized as a result of a *Miranda* violation, and that, as indicated above, the *Elstad* court stated that the "reasoning [of *Tucker*] applies with equal force when the alleged 'fruit' of a noncoercive *Miranda* violation is *neither a witness nor an article of evidence* but the accused's own voluntary testimony." (*Oregon* v. *Elstad, supra,* 470 U.S. at p. 308 [84 L.Ed.2d at p. 232], italics added.) However, the United States Supreme Court has stated unequivocally, in *Elstad* and *Tucker,* that a noncoercive *Miranda* violation is not a constitutional violation. As the *Elstad* court stated in summarizing *Tucker,* "Since there was no actual infringement of the suspect's constitutional rights, the case was not controlled by the doctrine expressed in *Wong Sun* that fruits of a constitutional violation must be suppressed . . . ." (*Oregon* v. *Elstad, supra,* 470 U.S. at p. 308 [84 L.Ed.2d at p. 231].) Thus, while the high court has not actually decided a case involving physical evidence seized as a result of a *Miranda* violation, it has decided the premise from which it necessarily follows that physical evidence seized as a result of a noncoercive *Miranda* violation is not excludable under the *Wong Sun* doctrine. Therefore, in our view, the Supreme Court has clearly decided the issue before us, and, as indicated above, on such questions we are bound by decisions of the high court. (*People* v. *Montano, supra,* 226 Cal.App.3d at p. 930.) In the instant case the physical evidence was not excludable as violative of *Miranda.*

 Appellant also argues that even if a "fruit of the poisonous tree" analysis does not apply to *nontestimonial* evidence seized as a result of a noncoercive *Miranda* violation, the cocaine seized and the nonverbal act of turning it over were, in effect, part of a "statement" obtained in violation of *Miranda* and therefore should have been suppressed. Not so. Even if we

accept arguendo appellant's premise that her act of reaching into her clothing, removing the cocaine and handing it to the officer constituted a statement obtained in violation of *Miranda*,[6] suppression of that "statement" is not required.

"[S]ection 1538.5 may not be used to suppress admissions and confessions on grounds that they are the product of Fifth Amendment and/or Sixth Amendment violations." (*People* v. *Mattson, supra,* 50 Cal.3d at p. 851; accord, *People* v. *Campa* (1984) 36 Cal.3d 870, 885 [206 Cal.Rptr. 114, 686 P.2d 634] [Claim that statement should be suppressed on the basis of the Fifth Amendment right against self-incrimination "cannot be the basis of a section 1538.5 motion, since section 1538.5 is limited to search and seizure issues."].) Therefore, appellant's *Miranda*-based claim that her statements should be suppressed was not properly before the court in the section 1538.5 motion. Accordingly, that claim, to the extent it is viewed as being raised under section 1538.5, is not reviewable on appeal. (*People* v. *Wakefield* (1987) 194 Cal.App.3d 67, 69 [239 Cal.Rptr. 277].)

There is, of course, a means other than section 1538.5 for raising the claim that statements obtained in violation of *Miranda* should be suppressed. "Common law motions to suppress statements for reasons unrelated to the lawfulness of a search, such as statements elicited in violation of *Miranda* . . . are appropriately the subject of an evidentiary motion under section

---

[6]We would conclude that the act of retrieving and handing over the cocaine to Officer Williamson was a testimonial act, and therefore when the police obtained this "statement" they did so in violation of *Miranda*. This act communicated, in the most graphic way possible, the incriminating fact that appellant had the cocaine on her person. (Cf. Evid. Code, § 225 [" 'Statement' means . . . nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression."].) The cocaine by itself, as evidence, even taken together with appellant's affirmative response to the officer's question as to whether she had any narcotics on her person, would have been virtually meaningless without the evidence that she handed the contraband over to the officer. Although we know of no California case on this question, the case of *State* v. *Wethered* (1988) 110 Wn.2d 466 [755 P.2d 797] is instructive. In that case, a police officer who suspected defendant Wethered of being in possession of hashish, told the suspect, without advising him of his rights under *Miranda*, to turn the hashish over to him or he would have the suspect's vehicle impounded. Wethered went to the car, retrieved a bag containing the drugs, and handed the bag to the officer. The court held, "[W]here a police officer's questioning or requests induce a suspect to hand over or reveal the location of incriminating evidence, such nonverbal act may be testimonial in nature; the act should be suppressed if done while in custody in the absence of *Miranda* warnings. Here, Wethered's act of producing the hashish was a confession of knowledge concerning the hashish, and is not admissible against him." (*Id.*, 755 P.2d at p. 800.) We find *Wethered* persuasive. We would reject appellant's contention that the cocaine itself constituted a statement for *Miranda* purposes. (*Id.* at pp. 801-802 [hashish itself was physical evidence and, although obtained in violation of *Miranda*, could not be excluded as the fruit of the *Miranda* violation, under *Tucker* and *Elstad*].)

402, subdivision (b), of the Evidence Code." (*People* v. *Temple* (1995) 36 Cal.App.4th 1219, 1223 [42 Cal.Rptr.2d 888], fn. omitted.) However, even if we view the portion of appellant's suppression motion directed at her non-*Mirandized* statements as being brought pursuant to Evidence Code section 402, subdivision (b), that portion of her suppression motion, for two reasons, is not cognizable on appeal.

First, section 1237.5 "tells us both how appeals may be *taken* and upon what they may be *based*. The statute first says that an appeal following a guilty plea may not be *taken* without a certificate of probable cause." (*People* v. *Halstead* (1985) 175 Cal.App.3d 772, 777 [221 Cal.Rptr. 71], original italics, fn. omitted.) Appellant pled nolo contendere. Such a plea is the functional equivalent of a guilty plea. (*McAlpine* v. *Superior Court* (1989) 209 Cal.App.3d 1, 4 [257 Cal.Rptr. 32]; § 1016, subd. 3.) Appellant did not obtain a certificate of probable cause. Therefore, as is indicated by the foregoing, her appeal is barred.

Second, section 1237.5 "tells us that appeals . . . may . . . be *based* on 'reasonable constitutional [or] jurisdictional . . . grounds going to the legality of the proceedings' resulting in the plea." (*People* v. *Halstead*, *supra*, 175 Cal.App.3d at p. 777, original italics.) Thus, "[O]n an appeal following a guilty plea, 'A defendant . . . can raise only those questions which go to the power of the state to try him despite his guilt. In other words, in the language of the statute, defendant can only raise "grounds going to the legality of the proceedings." (§ 1237.5)' [Citation.] *What may not be appealed are 'issues relating to [a defendant's] guilt or to the procedure which would otherwise be required to establish his guilt.'* [Citation.]" (*Id.* at p. 778, italics added, fn. omitted.) " '[A] plea of guilty waives any right to raise questions regarding the evidence, including its sufficiency or admissibility, and this is true whether or not the subsequent claim of evidentiary error is founded on constitutional violations.' " (*Ibid.*) An appeal of a denial of a motion under Evidence Code section 402, subdivision (b) to exclude non-*Mirandized* statements deals with guilt or innocence and its provability. Accordingly, the denial of appellant's motion to exclude her statements on the grounds that they were obtained in violation of *Miranda* is not cognizable on this appeal. (§ 1237.5; cf. *People* v. *Halstead*, *supra*, 175 Cal.App.3d 772 [guilty plea waives any appellate review of the denial of a motion made under *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361] for sanctions, such as dismissal or exclusion of evidence, based on police failure to preserve relevant physical evidence]; *People* v. *Wakefield*, *supra*, 194 Cal.App.3d 67 [same].)

B. *Arrest or Detention?**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Dibiaso, J., and Harris, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 25, 1996. Mosk, J., was of the opinion that the petition should be granted.

*See footnote, *ante*, page 947.