Filed 1/14/16  In re Zachary T. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ZACHARY T., a Person Coming Under the Juvenile Court Law. | |
| | D067539 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. JCM235246) |
| v. | |
| ZACHARY T., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Reversed.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

The juvenile court sustained a petition alleging that 15-year-old Zachary T. unlawfully used or was under the influence of methamphetamine, a misdemeanor. He appeals, contending the trial court erred when it denied his motion to suppress evidence of statements he made to police that he ingested marijuana and methamphetamine as having been taken in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). We agree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The juvenile court held a pretrial hearing to determine whether Zachary's statements should be admitted at trial. At the hearing, Deputy Sheriff Marc Snelling testified that on a morning in April 2014, police officers executed a search warrant at an apartment in Lakeside. Police detained Zachary and several people inside the apartment. Deputy Snelling testified that Zachary was not free to leave. Deputy Snelling observed that Zachary had "crust in the corners of his mouth," was "trying to lift off his chair," and "smacking his lips." He believed that Zachary might have been under the influence of a stimulant such as methamphetamine.

Deputy Snelling asked Zachary to go around the corner of the apartment building, where the adults could not see him, to conduct some field sobriety tests. After interacting with Zachary for about 20 minutes, Deputy Snelling asked Zachary whether he had recently used marijuana or methamphetamine. Deputy Snelling asked these questions because "the department of endangered children" was there and he "needed to know . . . for [Zachary's] welfare where to place [him] . . . ." After Zachary admitted using marijuana and methamphetamine, Deputy Snelling arrested him for being under the

influence of a controlled substance and advised Zachary of his constitutional rights. Deputy Snelling could not recall whether Zachary had been in handcuffs, but stated Zachary may have not been handcuffed because he was a juvenile. Zachary was not a subject of the search warrant, but his mother was a resident of the apartment.

After hearing from Deputy Snelling, the juvenile court addressed whether Zachary had been detained for questioning or in custody and whether Deputy Snelling's questions were investigatory or accusatory. The juvenile court denied the motion to suppress on the ground Deputy Snelling's questions following the sobriety tests were investigatory rather than accusatory.

## DISCUSSION

### I. *Legal Principles and Standard of Review*

A criminal suspect's statements to police during a custodial interrogation will be excluded under *Miranda* if the suspect is not first advised of specific Fifth Amendment rights. (*People v. Thornton* (2007) 41 Cal.4th 391, 432; *People v. Whitfield* (1996) 46 Cal.App.4th 947, 953 (*Whitfield*).) For *Miranda* to apply, the suspect must be in "custody," and the questioning must meet the legal definition of "interrogation." (*Whitfield*, at p. 953.) "The prosecution has the burden of proving that a custodial interrogation did not take place." (*Ibid.*)

"Custody consists of a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. [Citations.] When there has been no formal arrest, the question is how a reasonable person in the defendant's position would have understood his situation. [Citation.] All the circumstances of the interrogation are

3

relevant to this inquiry, including the location, length and form of the interrogation, the degree to which the investigation was focused on the defendant, and whether any indicia of arrest were present." (*People v. Moore* (2011) 51 Cal.4th 386, 394-395.) A child's age can be relevant to the custody determination for purposes of *Miranda* warnings. (*J.D.B. v. North Carolina* (2011) 564 U.S. ___, ___ [131 S.Ct. at pp. 2402-2403].)

The custody inquiry presents a mixed question of law and fact. (*People v. Moore* (2011) 51 Cal.4th 386, 395.) The trial court's factual findings regarding the circumstances surrounding the interrogation are reviewed for substantial evidence and we independently decide whether, given those circumstances, a reasonable person in minor's position would have felt free to end the questioning and leave. (*Ibid.*) " 'Interrogation' consists of express questioning, or words or actions on the part of the police that 'are reasonably likely to elicit an incriminating response from the suspect.' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 993, quoting *Rhode Island v. Innis* (1980) 446 U.S. 291, 301 (*Innis*).) " ' "The police may speak to a suspect in custody as long as the speech would not reasonably be construed as calling for an incriminating response." ' " (*People v. Huggins* (2006) 38 Cal.4th 175, 198.) The determination of whether an action is reasonably likely to elicit an incriminating response focuses primarily on the perceptions of the suspect, rather than the intent of the police. (*Innis*, at p. 301.)

We review the erroneous admission of statements obtained in violation of *Miranda* for prejudice under *Chapman v. California* (1967) 386 U.S. 18. (*In re Z.A.* (2012) 207 Cal.App.4th 1401, 1422.) Under this standard, reversal is required unless the People establish that the court's error was " 'harmless beyond a reasonable doubt.' "

4

(*Ibid.*) The appropriate inquiry is whether the verdict actually rendered was " 'surely unattributable to the error.' " (*People v. Quartermain* (1997) 16 Cal.4th 600, 621.)

## II. *Analysis*

Zachary asserts he was in custody when Deputy Snelling asked him if he had recently used marijuana or methamphetamine and that the question was intended to elicit an incriminating statement. Because the question was asked prior to *Miranda* warnings, he contends that his statements should have been suppressed. We agree and find the error was not harmless.

## A. A Custodial Interrogation Occurred

As a threshold matter, the parties dispute whether the juvenile court found Zachary was in custody or had merely been detained. *Miranda* does not come into play unless a custodial interrogation has occurred. (*People v. Mickey* (1991) 54 Cal.3d 612, 648.) Thus, if the custody prong is not satisfied, the court need not address the interrogation prong. Here, the juvenile court addressed the interrogation issue, finding no interrogation occurred because Deputy Snelling's questions were investigatory in nature. Accordingly, the juvenile court necessarily found that Zachary had been in custody. After our independent review, we agree.

While executing a search warrant on a residence the police may detain the occupants to prevent flight, minimize the risk of harm to the officers, facilitate orderly completion of the search and determine the relationship of an individual to the premises. (*Michigan v. Summers* (1981) 452 U.S. 692, 702-703, 705; *People v. Glaser* (1995) 11 Cal.4th 354, 365.) Here, Zachary had been detained with a number of other people to

5

allow officers to execute a search warrant. While Zachary's mother lived at the apartment, it is unknown whether she was one of the individuals detained. During that detention, Deputy Snelling observed Zachary and, based on those observations, believed Zachary might be under the influence of methamphetamine.

Deputy Snelling then moved Zachary away from the adults to perform sobriety tests. During this time, Deputy Snelling was presumably in full uniform and carrying a weapon. It is unknown whether Deputy Snelling touched Zachary or what tone of voice he used. It appears Deputy Snelling never told Zachary that he was free to leave and was not obligated to answer questions. Rather, Deputy Snelling testified that the people detained outside were not free to leave; thus, Zachary was presumably not free to leave after being singled out by Deputy Snelling. Isolating a suspect is considered to be a common interrogation technique. (*In re Elias V.* (2015) 237 Cal.App.4th 568, 579.) There is nothing in the record suggesting Zachary was particularly sophisticated or whether he had any prior confrontations with the police.

In our view, a reasonable 15 year old in Zachary's position would not have felt free to leave or refuse to answer questions. Under these circumstances, Zachary was in custody for *Miranda* purposes.

Additionally, based on Deputy Snelling's observations of Zachary and his subjective belief that Zachary was under the influence of a stimulant, Deputy Snelling should have known it was reasonably likely Zachary would provide an incriminating response when he asked Zachary about recent marijuana or methamphetamine use. Significantly, the question was highly relevant to Zachary's subsequent arrest for

6

unlawfully using or being under the influence of methamphetamine. The relationship of the question asked to the crime suspected is highly relevant to whether an interrogation occurred. (*People v. Wader* (1993) 5 Cal.4th 610, 637.) Thus, under the controlling test, the question was interrogation. We conclude the juvenile court erred in finding that Zachary had not been interrogated.

C. Prejudice

As we shall explain, the admission of Zachary's statements taken in violation of *Miranda* was not harmless.

At trial, Deputy Snelling testified that Zachary's enlarged pupils, rapid heart rate and test results suggested Zachary was under the influence of a central nervous system stimulant. After observing Zachary's physical symptoms, Deputy Snelling asked Zachary whether he had recently used marijuana. Zachary admitted smoking marijuana the night before. Deputy Snelling also asked Zachary whether he had ingested methamphetamine, which Zachary denied. In response, Deputy Snelling asked, "this is what I'm seeing going on with you physically . . . Is that what you really want to tell me?" Zachary then admitted that he smoked methamphetamine "a few hours prior to [their] contact." Deputy Snelling arrested Zachary for being under the influence of methamphetamine, but did not obtain a blood or urine sample for a toxicology analysis.

The prosecution asked its expert a lengthy and compound hypothetical reciting Deputy Snelling's observations and field sobriety test results and asked for an expert opinion as to whether or not the subject had ingested methamphetamine recently or was under the influence of methamphetamine. The prosecution expert responded

7

affirmatively, but also acknowledged that a neurological problem, ingestion of an energy drink, personal issues such as attention deficit disorder and "things like that" could mimic or duplicate the symptoms described in the prosecution's hypothetical. The prosecution expert believed this case was the first time he had been called upon to render an opinion without any toxicology results. He agreed that Deputy Snelling had not determined whether or not Zachary was taking any medication or was ill.

A defense expert testified that physical signs and symptoms can be consistent with intoxication with a substance, but that a toxicology screen is necessary to determine that the substance used was illegal because many over-the-counter substances can produce the same physical findings. The defense expert stated that it could not be determined whether a person was or was not under the influence of methamphetamine without a laboratory test.

Based on this testimony, the juvenile court found the evidence insufficient to prove, beyond a reasonable doubt, that Zachary had been under the influence of an illegal substance. The juvenile court then addressed the issue of whether or not Zachary used a controlled substance within the meaning of Health and Safety Code section 11550, subdivision (a). In finding this allegation true, the juvenile court relied upon the testimony of Deputy Snelling, the prosecution expert and Zachary's statement as proof that Zachary had used a controlled substance.

Without Zachary's confession that he had recently used methamphetamine, the testimony of Deputy Snelling and the prosecution expert would have been insufficient to prove Zachary had indeed used methamphetamine versus a noncontrolled substance that

8

mimicked the effects of methamphetamine. The prosecution expert testified that personal issues or a noncontrolled substance could duplicate the symptoms described in the prosecution's hypothetical. Deputy Snelling, however, never determined whether Zachary was taking any medication or was ill. Accordingly, we conclude that the true finding rendered in this case was attributable to the erroneous admission of Zachary's statements taken in violation of *Miranda* and reverse.

## DISPOSITION

The true finding is reversed. The matter is remanded to the juvenile court with directions to dismiss the underlying petition.

McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.