Filed 7/29/16  In re Michelle G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re MICHELLE G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F071653 |
| Plaintiff and Respondent, | (Super. Ct. No. 13CEJ600879-2) |
| v. | |
| MICHELLE G., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Gary R. Orozco, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Clifford E. Zall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Detjen, J. and Franson, J.

Appellant Michelle G., a minor at the time of these proceedings, appeals from the juvenile court's dispositional order declaring her a ward of the court. Following a contested hearing on a petition filed under Welfare and Institutions Code section 602, appellant was found to have committed the crime of driving under the influence (Veh. Code, § 23152, subd. (a)). Appellant contends the juvenile court erred during the contested hearing by failing to exclude statements allegedly made in violation of appellant's *Miranda*[1] rights and by admitting unauthenticated evidence. For the reasons set forth below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

At around 4:30 a.m. on July 5, 2014, California Highway Patrol Officers Louis Celaya and Travis Vasquez were contacted by dispatch and told to responded to a 911 call purporting to be from a young woman who had consumed too much alcohol. The officers proceeded to Chestnut Avenue, south of Annadale Avenue, looking for a white Ford parked on the side of the road with the keys possibly thrown out of the window, in order to conduct a welfare check. The location was in an unincorporated and rural area in Fresno County.

Officers Celaya and Vasquez located the vehicle at the expected location and approached on foot. Both were in uniform but they had not activated the emergency lights on their car. As they approached, a set of keys was located in the roadway, directly to the left of the driver-side window. Appellant was found in the driver's seat of the vehicle. She had red, watery eyes, slow and slurred speech, and had difficulty keeping her eyes open. She was incoherent and disoriented. An "overwhelming odor of an alcoholic beverage" was emanating from the vehicle, from appellant's breath, and from appellant herself. When asked if she was okay, appellant responded that she was not feeling well because she had too much to drink.

---

[1]      *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

Officer Celaya asked appellant to exit the vehicle. Appellant complied, but was unsteady on her feet and had trouble standing. Appellant had to lean on the patrol car to avoid falling over. As a safety measure, appellant was moved from the side of the patrol car to its rear passenger seat, where she sat with her feet remaining outside of the car. Appellant was not handcuffed or restrained in any way. Officer Celaya did not complete any field sobriety tests, believing appellant would fall over. While he tried to conduct a horizontal gaze nystagmus test, appellant could not keep her eyes open long enough to complete the test.

Officer Celaya questioned appellant in line with his normal procedures when conducting field sobriety tests. Upon questioning, appellant admitted to drinking that evening. She said she had started drinking around 10:00 p.m. and had consumed two bottles of vodka. Appellant also admitted she had been driving the vehicle. She claimed she was coming from a friend's house and was trying to go home. Appellant was not asked when she had stopped driving. As a result of Officer Celaya's observations and investigation, appellant was placed under arrest. The full encounter lasted approximately 30 minutes.

At the contested hearing, appellant objected to the introduction of any testimony regarding Officer Celaya's questioning, and appellant's answers, arguing the questioning violated appellant's *Miranda* rights. The juvenile court overruled the objection.

At the close of evidence, the prosecutor also sought to introduce a recording of the 911 call that led to appellant's arrest. Appellant raised several objections, including that the recording was not properly authenticated. In response to these objections, the juvenile court admitted only the portion of the tape that purported to involve appellant. With respect to the authentication issue, the juvenile court apparently concluded the audio was self-authenticating.

On the recording, the caller, referred to by the operator as Michelle, stated she may have hit a curb and had pulled over. The operator asked appellant to remove her car

3

keys and throw them out the window. Appellant confirmed she had done so. Appellant and the 911 operator then worked to determine where appellant was located and remained connected on the line until appellant stated the police had pulled up behind her.

Following the hearing, the juvenile court found the petition true. Appellant was ultimately deemed a ward of the court and sentenced to probation. This appeal timely followed.

## DISCUSSION

### *Admission of Appellant's Statements to the Police*

Appellant contends her statements to the police were inadmissible under *Miranda* because she was in custody, resulting from a de facto arrest, when questioned.

*Standard of Review and Applicable Law*

The general guidelines of *Miranda* are well settled. " '*Miranda* requires that a criminal suspect be admonished of specified Fifth Amendment rights. But in order to invoke its protections, a suspect must be subjected to custodial interrogation .…' [Citation.] 'Thus two requirements must be met before *Miranda* is applicable; the suspect must be in "custody," and the questioning must meet the legal definition of "interrogation." ' " (*People v. Whitfield* (1996) 46 Cal.App.4th 947, 953 (*Whitfield*).)

"A person is in custody for purposes of *Miranda* if he is 'deprived of his freedom in any significant way or is led to believe, as a reasonable person, that he is so deprived.' " (*Whitfield*, *supra*, 46 Cal.App.4th at p. 953.) "Whether a person is in custody is an objective test; the pertinent inquiry is whether there was ' " 'a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' " ' " (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400 (*Leonard*).)

"Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.] When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must 'apply a deferential substantial evidence standard' [citation] to the trial court's factual findings regarding the

4

circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, 'a reasonable person in [the] defendant's position would have felt free to end the questioning and leave' [citation]." (*Leonard*, *supra*, 40 Cal.4th at p. 1400.)

*Appellant Was Not Subject to a Custodial Interrogation*

Appellant contends the fact that she was taken out of her car and put into a police vehicle for questioning shows a reasonable person would not feel they were free to leave under the circumstances. We do not agree.

Objectively, the facts here do not rise to the level of a restraint on appellant's liberty equivalent to an arrest. Indeed, the facts here are less compelling than those found not to constitute a custodial interrogation by the United States Supreme Court in *Berkemer v. McCarty* (1984) 468 U.S. 420 (*Berkemer*). In *Berkemer*, the defendant was followed by a Highway Patrol officer for two miles before being forced to stop. He was asked to exit his vehicle, at which point it was clear he was having trouble standing and the officer concluded the defendant would be charged and could no longer leave. Following that determination, the defendant was asked to perform a field sobriety test and questioned about his use of drugs and alcohol. Only after these questions was the defendant arrested. (*Id.* at p. 423.)

In determining the defendant's *Miranda* rights had not been violated, the Supreme Court recognized that a traffic stop was a significant curtailment of a person's freedom of action. (*Berkemer*, *supra*, 468 U.S. at p. 436.) The stop itself, however, was not considered sufficiently custodial to require *Miranda* warnings. (*Id.* at pp. 439-441.) Nor was the questioning undertaken by the officer. In that regard, the Supreme Court found that a single police officer asking a modest number of questions and requesting the defendant to perform a simple balancing test at a location visible to passing motorists was not treatment of the sort that can be fairly characterized as the functional equivalent of an arrest. (*Id.* at p. 442.) Even though the officer knew prior to his questioning that the

5

defendant would be cited, a "policeman's unarticulated plan has no bearing on the question whether a suspect" is in custody. (*Ibid.*) All that matters is how a reasonable person would understand the situation. (*Ibid.*)

In this case, prior to being contacted by the police, appellant spoke to a 911 operator, confirmed she was not feeling well, assisted with attempts to determine her location, and acknowledged that police were arriving to help her. When the police arrived, they did not activate their lights. Appellant was initially questioned in her car and only asked to exit once it was clear she was disoriented. Upon exiting the car, appellant was found to be incapable of standing on her own. She was then seated, unrestrained, in the police car, in such a position that she could exit the car if she wished, as her feet were outside of the vehicle. Officer Celaya then asked appellant several questions consistent with his normal procedure for field sobriety tests.

While Officer Celaya may have readily recognized that appellant could not freely leave the scene, he did not convey this fact to appellant and, thus, his view is not dispositive. The police had arrived on a welfare call initiated through contact with and acquiescence from the person contacted. There was no initial show of force by the police to stop the vehicle and the police conduct upon contact was generally consistent with normal investigatory stop techniques, whether criminal or welfare based. While being placed in a police vehicle can imply arrest under many circumstances, the facts of this case show the opposite. Appellant was neither handcuffed nor restrained, was not locked within the vehicle, and was only seated within due to safety concerns. The full encounter lasted roughly 30 minutes, and thus was not overly intrusive. The juvenile court therefore correctly concluded that a reasonable person would not view this scenario as an arrest. As there was no *Miranda* violation, appellant's statements were properly admitted.

6

## *Admission of the 911 Recording*

Appellant also alleges that introducing portions of the 911 call purportedly including appellant was improper because the recording was not properly authenticated.

*Standard of Review and Applicable Law*

"Audio recordings are writings as defined by the Evidence Code." (*People v. Dawkins* (2014) 230 Cal.App.4th 991, 1002.) "Authentication of a writing … is required before it may be admitted in evidence. ([Evid. Code,] §§ 250, 1401.) Authentication is to be determined by the trial court as a preliminary fact ([Evid. Code,] § 403, subd. (a)(3)) and is statutorily defined as 'the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is' or 'the establishment of such facts by any other means provided by law' ([Evid. Code,] § 1400)." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266 (*Goldsmith*).)

When authenticating writings, the proof required varies with the nature of the evidence that the writing is being offered to prove and with the degree of possibility of error. "The first step is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case. [Citation.] The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered. [Citation.] Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' " (*Goldsmith*, *supra*, 59 Cal.4th at p. 267.)

"Undoubtedly the usual way of laying a foundation for the playing of a recording is to call one of the participants or a monitor to testify that the conversation was accurately recorded." (*People v. Fonville* (1973) 35 Cal.App.3d 693, 708 (*Fonville*).) However, this is not absolutely necessary. The Evidence Code provides for many ways

to authenticate a document. Relevant to this case, one such way is "by evidence that the writing refers to or states matters that are unlikely to be known to anyone other than the person who is claimed by the proponent of the evidence to be the author of the writing." (Evid. Code, § 1421.)

"We review claims regarding a trial court's ruling on the admissibility of evidence for abuse of discretion. [Citation.] Specifically, we will not disturb the trial court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Goldsmith*, *supra*, 59 Cal.4th at p. 266.)

*The Juvenile Court Did Not Abuse Its Discretion*

In this case, the prosecution did not call any witnesses to authenticate the contested recording. While the prosecution provided a signed declaration purporting to disclose the origins of the recording, the declarant was not called as a witness and the record does not reflect that the declaration was admitted into evidence. Thus, to support their position the recording was properly authenticated, the People rely exclusively on the self-authenticating nature of the recording and supporting circumstantial evidence in the record. Appellant contends the recording should be excluded because there was no witness presented to testify regarding authenticity and disputes the recording was sufficiently unique to be self-authenticating. We agree with the People.

Appellant's first argument, that authentication cannot exist without a supporting witness, is easily rejected. Evidence Code section 1411 provides that except as required by statute, "the testimony of a subscribing witness is not required to authenticate a writing." While it may be both the common, and best, practice to produce an appropriate witness when no authentication stipulation has been reached, it is not mandatory. (See *Fonville*, *supra*, 35 Cal.App.3d at p. 709.)

We thus turn to whether the juvenile court abused its discretion by concluding the recording is self-authenticating—i.e., whether it refers to or states matters that are

8

unlikely to be known to anyone other than the person who is claimed by the proponent of the evidence to be the author of the recording.

The 911 call was introduced in order to support the claim that appellant had been driving the vehicle she was found within while intoxicated and, thus, authentication requires a prima facie showing the statements on the tape accurately reflect statements made by the woman found in the car, and that this woman was appellant. (Cf. *Goldsmith*, *supra*, 59 Cal.4th at p. 267 [identifying purpose of photograph as substantive proof of alleged violation].) We conclude the juvenile court did not abuse its discretion in admitting the 911 call. The recording has many aspects, supported by circumstantial evidence of authenticity introduced at the hearing, confirming appellant was the caller, and refers to and states matters unlikely to be known to anyone other than appellant.

The caller on the tape stated she was driving a white Expedition and had parked on the side of the road in part because her head hurt. She could see a Flyers gas station and train tracks nearby, saw mobile homes on both sides of her, and the closest road sign appeared to her to be "Arold" or "Arrrnold." The caller responded to the name Michelle and confirmed she had thrown her keys out of the window. She remained on the line until what she believed was a police vehicle pulled up behind her.

Comparatively, Officer Celaya testified he was searching for a white Ford. He pulled up behind a vehicle parked on the side of the road, south of Annadale Avenue, and discovered appellant, whose first name is Michelle, sitting in the driver's seat. Appellant told Officer Celaya she was not feeling well and that she had previously taken a headache pill. A set of keys was located on the roadway next to the driver-side window.

In light of the statements made on the tape, which correspond closely to the facts surrounding appellant's encounter with Officer Celaya and would only have been known by the person who had spoken with 911, the juvenile court could reasonably find a prima facie case that the 911 tape was what it purported to be—a conversation between appellant, who was the woman located by Officer Celaya, and a 911 operator. As there

9

was no suggestion in the record that any form of tampering had occurred, and only limited portions of the tape were introduced, we find no abuse of discretion in admitting the tape.  (See *Goldsmith*, *supra*, 59 Cal.4th at pp. 272-273.)

## DISPOSITION

The judgment is affirmed.