Filed 6/10/25  P. v. Wilson CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DARON LAMONT WILSON,<br><br>    Defendant and Appellant. | A169873<br><br>(San Francisco City & County<br> Super. Ct. No. CRI-21011570) |

A jury convicted defendant Daron Lamont Wilson of two felony counts of burglary (Pen. Code, §§ 459, 463, subd. (a))[1] and one misdemeanor count of resisting a peace officer (§ 148, subd. (a)(1)).  Wilson argues the trial court erred by admitting statements he made to police officers that everybody was looting, asserting the statements were obtained in violation of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602] (*Miranda*).  We conclude that any assumed *Miranda* error was harmless and, accordingly, we affirm.

## I.  BACKGROUND

In July 2022, Wilson was charged by information with burglary during a state of emergency (§ 463, subd. (a); count I); second degree commercial

---

[1] Undesignated statutory references are to the Penal Code.

1

burglary (§ 459; count II); carrying a concealed, unregistered firearm (§ 25400, subd. (a)(2); count III); carrying a loaded, unregistered firearm (§ 25850, subd. (a); count IV); and misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count V). As to counts I through IV, the information alleged that Wilson committed the offenses while on bail (§ 12022.1, subd. (b)).

## A. Evidence Code Section 402 Hearing

The People moved in limine to admit evidence of statements Wilson made to police officers the night of his arrest, including statements that everybody was looting. On October 9, 2023, the trial court held an Evidence Code section 402 hearing to determine the admissibility of Wilson's statements.

Officer Brittney Taylor testified that on November 19, 2021, around 11:48 p.m., her partner and she were flagged down about a burglary at a Walgreens on Market Street and 9th Street. When they responded, the Walgreens window was shattered and she saw Wilson inside the store. Wilson jumped out of the window and she commanded him to stop. He did not stop and she pursued him on foot. Officer Taylor communicated his description to other officers in the area, who detained Wilson one block over on 10th Street. Wilson had fallen onto the sidewalk while running and after he fell, he was handcuffed.

When Wilson was sitting on the sidewalk handcuffed with other officers around him, Officer Taylor heard Wilson say, " 'Man, everybody looting.' " She had not asked him a question and did not hear any other officer ask him a question. Defense counsel played body camera footage of Wilson's statements. In the video, Wilson is handcuffed and seated on the sidewalk. As he is asked questions such as his date of birth and how to spell his name,

2

Officer Cestoni[2] said, "What the fuck were you doing?  Come on.  Act smarter."  As Wilson continued responding to questions about the spelling of his name, Officer Cestoni said, "You thought you were really going to get away with it while we're all working?"  Wilson replied, "Everybody's looting though, it's like come on now."  Officer Cestoni asked, "Why does that make it cool for you to loot?  Think smarter man, you fucking know—" and Wilson replied, "Everybody's looting out here."  Officer Cestoni did not testify at the hearing.

Officer Taylor testified she was present when Wilson said multiple times that everybody was looting, and she did not hear the exchange with Officer Cestoni.  The sergeant on the scene then advised Officer Taylor to *Mirandize* Wilson.  Officer Taylor read Wilson his *Miranda* rights at 11:55 p.m., after which he refused to speak.

At the conclusion of the hearing, the trial court allowed the People to admit evidence of Wilson's statements that everybody was looting.  After determining Wilson was in custody, the court concluded he was not being interrogated.  The court laid out the objective test—an interrogation is any word or action by the police that the police should know is reasonably likely to elicit an incriminating response.  A spontaneous statement not made in response to questioning, on the other hand, may be admitted because it is not the product of a police interrogation.  The court determined Officer Taylor's testimony that Wilson repeatedly stated that everyone was looting was admissible.  The court had listened to the body camera footage and determined there was "certainly an 'everyone looting' statement shortly after"

---

[2] While the name of the police officer who asked these questions is not clear, because both parties refer to him as Officer Cestoni, we also refer to him by that name.

Wilson was asked his name and how to spell it and "before Officer Cestoni . . . start[ed] saying think smarter and having his colloquy with Mr. Wilson, so Officer Taylor may testify to what she heard from Mr. Wilson that he said that everyone was looting. That is spontaneous."

## B. Jury Trial

As relevant here, the following evidence was presented at trial.

On November 19, 2021, at approximately 11:48 p.m., after being waved down, Officer Taylor and Officer Christina Galande went to the Walgreens on the corner of Market Street and 9th Street. The lights were off and the storefront window had been broken. They saw people inside the store, including Wilson. Wilson wore all black clothing and a ski mask and was behind the register area. After announcing they were police officers, Wilson jumped out of the window. Officer Galande pursued Wilson in the patrol car while Officer Taylor chased him on foot. Wilson ran down Market Street, turned onto 10th Street, and later fell as he ran across the street. He attempted to get back up and, at that point, other police units had arrived.

Officers Kyle Roach and Keith Wong responded to the area where they saw Wilson running on 10th Street. Wilson fell and wobbled to the sidewalk, where Officer Wong and a police sergeant handcuffed him. When he was arrested, Wilson wore black clothing and had a ski mask and a backpack. Officer Roach found a firearm under a dumpster near where Wilson fell.

Officer Taylor testified that Wilson had made a statement regarding looting, whereupon the prosecutor played footage from Officer Taylor's body camera. In the video, Wilson stated, "Everybody's looting though. It's like, come on now. Everybody's looting out here."[3] After the video played, Officer Taylor confirmed she heard Wilson say, "Everybody's looting out here."

---

[3] The video played at trial contained audio of only Wilson's statements.

After Wilson was detained, Officer Galande returned to Walgreens and subsequently obtained security camera footage.  Security footage from inside Walgreens showed multiple people wearing black clothing and hoods and masks enter Walgreens and run through the store, rummage through the pharmacy bins and shelves, kick a locked pharmacy door, and climb over the counter.  Exterior security footage showed people jump out from the Walgreens window onto Market Street.

The jury found Wilson guilty of burglary during a state of emergency (count I), commercial burglary (count II), and resisting a peace officer (count V).  The jury could not reach verdicts on the firearm charges (counts III and IV) and the trial court declared a mistrial as to those counts.  The court subsequently dismissed counts III and IV at the People's request.  The court suspended imposition of sentence and placed Wilson on two years formal probation, conditioned on serving one year in county jail with the recommendation that his sentence be served on home detention.

## II. DISCUSSION

Wilson argues his statements to police officers that, "Everybody's looting though.  It's like, come on now.  Everybody's looting out here," were obtained in violation of his *Miranda* rights and should not have been admitted into evidence.  Additionally, he contends that the trial court's error in admitting his statements was not harmless beyond a reasonable doubt.

### A. General Legal Principles

" '*Miranda* requires that a criminal suspect be admonished of specified Fifth Amendment rights.  But in order to invoke its protections, a suspect must be subjected to *custodial interrogation* . . . .' [Citation.]  'Thus two requirements must be met before *Miranda* is applicable; the suspect must be in "custody," and the questioning must meet the legal definition of

5

"interrogation." ' " (*People v. Whitfield* (1996) 46 Cal.App.4th 947, 953.)
" '[T]he term "interrogation" under *Miranda* refers not only to express
questioning, but also to any words or actions on the part of the police (other
than those normally attendant to arrest and custody) that the police should
know are reasonably likely to elicit an incriminating response . . . .' (*Rhode
Island v. Innis* (1980) 446 U.S. 291, . . . 301, [100 S.Ct. 1682], fn. omitted.)"
(*People v. Young* (2019) 7 Cal.5th 905, 923.)  On the other hand,
" '[s]tatements volunteered when not in response to an interrogation are
admissible against a defendant.' " (*People v. Roldan* (2005) 35 Cal.4th 646,
735.)  In determining whether police conduct was reasonably likely to elicit
an incriminating response, the primary focus is on the perceptions of the
suspect, rather than the intent of the police.  (*Rhode Island v. Innis*, at
p. 301; see also *People v. Davis* (2005) 36 Cal.4th 510, 554.)  "Absent
'custodial interrogation,' *Miranda* simply does not come into play" and no
*Miranda* advisement is necessary.  (*People v. Mickey* (1991) 54 Cal.3d 612,
648.)

"The erroneous admission of a defendant's statements obtained in
violation of the Fifth Amendment is reviewed for prejudice under the beyond
a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18
[87 S.Ct. 824].  [Citations.]  That test requires the People here 'to prove
beyond a reasonable doubt that the error complained of did not contribute to
the verdict obtained.' " (*People v. Elizalde* (2015) 61 Cal.4th 523, 542.)  The
error must be " 'unimportant in relation to everything else the jury
considered on the issue in question, as revealed in the record.' [Citation.]
Thus, the focus is what the jury actually decided and whether the error might
have tainted its decision.  That is to say, the issue is 'whether the . . . verdict
actually rendered in *this* trial was surely unattributable to the error.' "

(*People v. Neal* (2003) 31 Cal.4th 63, 86.) "Another way to phrase the *Chapman* test is this: ' "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" ' " (*People v. Delgado* (2018) 27 Cal.App.5th 1092, 1109.)

### B. Analysis

Wilson argues the trial court erred when it ruled at the evidentiary hearing that evidence of his statements to police made before he was read his *Miranda* rights was admissible. Specifically, he argues his statements, "Everybody's looting though. It's like, come on now. Everybody's looting out here," should have been excluded. The parties agree that Wilson was in custody at the time he made these statements. They dispute whether his statements were made in response to an interrogation.

We need not decide whether Wilson was interrogated for *Miranda* purposes because, even assuming that he was, our review of the record satisfies us that any assumed *Miranda* error was harmless beyond a reasonable doubt. The parties dispute whether Wilson's "everybody's looting" statements were an admission of guilt. As Officer Taylor confirmed, Wilson did not say "I was looting" or "we were looting." Even assuming the jury understood Wilson's statements as an admission that he intended to loot—a reasonable interpretation—evidence in the record demonstrates a rational jury would have found Wilson guilty of both burglary charges[4] without evidence of his statements. Wilson challenges only the element of intent which is required for both offenses. (See §§ 459, 463, subd. (a), 484, subd. (a) [offenses require entry into a building with intent to commit theft].)

Walgreens was closed, the lights were off, and it was almost midnight. Police officers testified that the store window had been shattered. Security

---

[4] Wilson only challenges the two burglary convictions.

footage showed multiple people wearing black clothing with hoods and masks enter Walgreens and run through the store, rummage through the pharmacy bins and shelves, kick a locked pharmacy door, and climb over the counter. When they arrived, police officers saw Wilson inside the store, standing behind the register area wearing a ski mask. When the officers announced themselves and instructed Wilson to stop, he jumped out of the window and ran away. This evidence demonstrates beyond a reasonable doubt that a jury would have concluded that Wilson intended to commit theft when he entered the store. Contrary to Wilson's contention, his statements were not the only direct evidence of his intent in entering Walgreens nor were they "the[] key piece of evidence against" him.

Moreover, in his closing argument, the prosecutor laid out for the jury the evidence which he argued demonstrated Wilson's intent. In doing so, the prosecutor did not mention Wilson's "everybody's looting" statements. He only briefly mentioned the statements in arguing they were just one piece of evidence which supported the requirement in count I that the burglary be committed during a state of emergency, urging that Wilson's statements recognized that looting was occurring during the COVID-19 pandemic. (See § 463, subd. (a) [looting is burglary committed during a state of emergency].)

## III. DISPOSITION

The judgment is affirmed.

8

LANGHORNE WILSON, J.

WE CONCUR:


HUMES, P. J.


SMILEY, J.


A169873
*People v. Wilson*